[S. F. No. 8889.  In Bank.—October 10, 1919.]

M. P. FLICKENGER et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT—HAY HAULING BY AUTO TRUCK-MAN—INDEPENDENT CONTRACTOR.—A person engaged in the truck business having his own truck and doing a general hauling business who was engaged to assist another in hauling hay without any definite arrangement being made as to compensation, who loaded his truck in his own way at times suited to his own convenience, who never reported before going to work or after, and who had no one controlling his actions at any time, except that he was expected to do a full day's work, was an "independent contractor" and not

an "employee" as those terms are used in the Workmen's Compensation and Safety Act of 1917.

[2] ID.—COMPENSATION ACT OF 1917—DEFINITION OF "EMPLOYEES"—RESTRICTION OF DEFINITION OF INDEPENDENT CONTRACTOR.—Section 8 (b) of the Workmen's Compensation, Insurance and Safety Act of 1917, providing all persons rendering service are employees except those who render service "other than manual labor, for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished," restricts the term "independent contractor," and consequently enlarges to a corresponding degree the meaning of the term "employee."

[3] ID.—PROVISION OF ACT UNCONSTITUTIONAL.—Section 8 (b) of the Workmen's Compensation, Insurance and Safety Act of 1917, in so far as it restricts the meaning of the term "independent contractor" and enlarges the meaning of the term "employee," is unconstitutional as an attempt to enlarge the jurisdiction of the Industrial Accident Commission.

[4] ID.—CONSTITUTIONAL AMENDMENT RATIFYING ACT NOT RETROACTIVE.—The constitutional amendment of 1918 authorizing workmen's compensation which definitely ratifies and affirms the scope of the act has no application to an award of compensation made prior to the time that such amendment went into effect.

PROCEEDING in Certiorari to review an award of the Industrial Accident Commission. Annulled.

The facts are stated in the opinion of the court.

Redman & Alexander and E. L. Stockwell for Petitioners.

Christopher M. Bradley and Warren H. Pillsbury for Respondents.

LAWLOR, J.—This is a writ of *certiorari* to review an award made by the Industrial Accident Commission against the Aetna Life Insurance Company as insurance carrier for M. P. Flickenger, in favor of Lillian Reeves in the sum of $4,346, as compensation for the death of her husband, Tarvin A. Reeves, who was killed while hauling hay for Flickenger.

For some time prior to the accident Reeves was the owner of an automobile truck and was engaged in the "truck business" in the city of Bakersfield. He received most of his calls through a telephone which he had in a cigar-store. Reeves had formerly done hauling for one W. A. Ferguson,

using his own motor truck and receiving $15 per day for his services. Not long before Reeves was killed Ferguson retired from the trucking business and turned it over to Reeves. Thenceforward Reeves was ready to do a general trucking business on his own account and any calls that thereafter would come to Ferguson were to be referred to him.

Flickenger, who was in the feed and fuel business, was engaged in hauling with his own truck a quantity of hay to some sheep and cattle that were starving on a ranch about eight miles from Edison, a small town ten miles distant from Bakersfield. It was raining and the roads were in very bad condition. The work of moving the hay was not progressing rapidly enough with one truck, and hence Flickenger found it necessary to secure help, and so he engaged Reeves and two others to assist in hauling the hay. The deceased went to work on the morning of March 9, 1918, and about the middle of the afternoon of March 11th, while crossing the Santa Fe track with his truck, was struck by a locomotive and sustained injuries from which he died a few hours later.

The chief question presented here is as to the status of Reeves in performing this service—was he an independent contractor or an employee of Flickenger? The facts in this regard are these: Flickenger testified that, owing to the condition of the roads and the fact that no certain amount of work could be accomplished in any given time, no definite price was agreed upon and no time set for the completion of the work, but that he told Reeves "to go out and haul hay and keep at hauling it and we will not make any definite arrangement, but when you are through hauling, why you will find you will not be dissatisfied with the terms of settlement." He testified further that he sent one of his employees with Reeves the first trip to show him the best road and where to unload the hay. After that Flickenger left Reeves to haul as he pleased, and did not require him to report either before or after work, though he expected him to put in a full day. Mrs. Reeves testified that deceased had told her that it was "day work" and that he supposed he would get $15 a day, which was the price he was accustomed to receive when he worked with his truck. Flickenger further testified that he had paid each of the other men $15 a day. This amount included not only the services of the men and the trucks, but

also covered all necessary expenses for oil, gasoline, repairs, and the like, in connection with the operation of the trucks.

From these facts the Industrial Accident Commission found: "That said injury arose out of, and in the course of, such employment, was proximately caused thereby, and occurred while the employee was performing service growing out of and incidental to the same." It was further found: "That at the time of said injury the employee was not engaged in any of the occupations or employments excluded by section 8 of the Workmen's Compensation, Insurance and Safety Act of 1917 from the provisions of said act." In addition to the death benefit of $4,346 there was an award of one hundred dollars for funeral expenses and $30 for medical expenses.

Petitioners contend that the facts do not support the finding that deceased was the employee of Flickenger, but that he "was an independent contractor as that term was used prior to the adoption of the Compensation Act," that the award can be sustained only under the statutory definition of the term "employee" appearing in section 8 (b) of the Compensation Act of 1917, and that section 8 (b) is, therefore, unconstitutional. In other words, the position of petitioners is this: Section 8 (b) of the Compensation Act of 1917 has changed and enlarged the meaning of the term "employee," by restricting the definition of what constitutes an "independent contractor," so as to include in the former classification persons who, under the law, as it stood prior to the constitutional amendment of 1911, authorizing the creation of the commission, and prior to the passage of section 8 (b), would have come under the latter designation; that this section is unconstitutional because it is an attempt to extend the jurisdiction of the Industrial Accident Commission beyond the limits prescribed by section 21, article XX, of the constitution, which confines the authority of the Industrial Accident Commission to the settlement of disputes arising between employers and employees, by bringing into the list of "employees" persons who prior to this legislative enactment were classed as "independent contractors." Section 8 (b) reads as follows:

"(b) Any person rendering service for another, other than as an independent contractor, or as expressly excluded herein, is presumed to be an employee within the meaning of

this act. The term 'independent contractor' shall be taken to mean, for the purposes of this act: Any person who renders service, other than manual labor, for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished." (Stats. 1917, p. 835.)

The terms "employee" and "independent contractor" had been frequently defined by the courts of this state prior to the amendment to the constitution authorizing the creation of the Industrial Accident Commission. (Art. XX, sec. 21.). In *White* v. *City of Alameda,* 124 Cal. 95, [56 Pac. 795], it is said: "There is no necessary distinction between the terms 'servant' and 'employee'. . . . The term 'employee' may sound more euphonious than the term 'servant,' but there is no substantial difference between the two except as the statutes make a difference." Section 2009 of the Civil Code defines a servant as "one who is employed to render personal service to his employer, otherwise than in the pursuit of an independent calling, and who in such service remains entirely under the control and direction of the latter, who is called his master."

The status of "employee" has been distinguished from that of an "independent contractor" in the following cases: *Boswell* v. *Laird,* 8 Cal. 469, [68 Am. Dec. 345]; *Du Pratt* v. *Lick,* 38 Cal. 691; *Bennett* v. *Truebody,* 66 Cal. 509, [56 Am. Rep. 117, 6 Pac. 329]; *Ahern* v. *McGeary,* 79 Cal. 44, [21 Pac. 540]; *Hedge* v. *Williams,* 131 Cal. 455, [82 Am. St. Rep. 366, 63 Pac. 721, 64 Pac. 106]; *Louthan* v. *Hewes,* 138 Cal. 116, [70 Pac. 1065]; *Green* v. *Soule,* 145 Cal. 96, [78 Pac. 337]; *Houghton* v. *Loma Prieta Lumber Co.,* 152 Cal. 500, [14 Ann. Cas. 1159, 14 L. R. A. (N. S.) 913, 93 Pac. 82]; *Houghton* v. *Loma Prieta Lumber Co.,* 152 Cal. 574, [93 Pac. 377]; *Pearson* v. *Potter Co.,* 10 Cal. App. 245, [101 Pac. 681].

In *Bennett* v. *Truebody, supra,* it was said: "The plumber was left to produce the desired result in his own way. If that did not constitute him an independent contractor, we do not know what would. There was no stipulation as to the amount to be paid for the work, but that is an immaterial circumstance in this case." The court there referred to and cited with approval the early case of *Milligan* v. *Wedge,* 12 Adol. & E. 737, where a butcher hired a drover to drive a

bullock from one specified place to another. Coleridge, J., held that the drover was an independent contractor.

So, also, the difference between an employee and an independent contractor has been clearly stated in a number of decisions in this state since the creation of the Industrial Accident Commission, which definitions are in entire accord with those laid down in the authorities above cited. In *Western Indemnity Co.* v. *Pillsbury*, 172 Cal. 807, [159 Pac. 721], where the question involved was whether the injured teamster was an employee or an independent contractor, it was said:

"It is undisputed that the contract between Stevens and Tittle did not cover any definite period. It is also undis-puted that the latter's foreman directed Stevens and his driver in the matter of the materials to be hauled. There was no agreement regarding the bulk of matter or the number of loads per day, but each wagon was to be used for the period of eight hours a day, both in removing the rubbish and surplus sand. . . . Neither did he pay Mr. Stevens a certain sum for use of the teams and another sum for personal services. . . . But it is urged with much force that since the foreman for Tittle Company directed Stevens in the matters of the materials to be hauled, the latter was not an independent contractor—that the test of what constitutes independent service lies in the control exercised, and that the driver being under the supervision of the foreman was, therefore, an employee of Tittle. It is true that many authorities specify 'control' of the person performing work as the means of differentiating service from independent employment. The test of 'control,' however, means '*complete* control.' For example, the citizen who hires a taxicab to take him to a certain place exercises that amount of control over the driver, but he does not thereby become the man's employer. . . . 'It is well settled that where one person is performing work in which another is beneficially interested, the latter may exercise over the former a certain measure of control for a definite and restricted purpose, without incurring the responsibilities, or acquiring the immunities, of a master, with respect to the person controlled.' . . . In the case at bar confusion arose out of the fact that Stevens drove his own team, but we see nothing in that fact which made him a servant and not a contractor. . . . It has been said that the true test of a con-

tractor is that he renders service in the course of an independent occupation following his employer's desires in the results, but not in the means used. . . . But in weighing the control exercised we must carefully distinguish between authoritative control and mere suggestion as to detail or the necessary co-operation where the work furnished is part of a larger undertaking. . . . In *Chisholm* v. *Walker & Co.,* 2 B. W. C. C. 261, a case very much like the one at bar arising under a workman's compensation statute, it was held that the man who received a certain sum per day for the work of himself and his horse was not engaged in a 'contract of service.' A similar ruling was made in *Ryan* v. *County Council of Tipperary,* 5 B. W. C. C. 578." (See, also, *Donlon Bros.* v. *Industrial Acc. Com.,* 173 Cal. 250, [159 Pac. 715] ; *Fidelity & Deposit Co.* v. *Brush,* 176 Cal. 448, [168 Pac. 890] ; *Parsons* v. *Industrial Acc. Com.,* 178 Cal. 394, [173 Pac. 585].)

In *Fidelity & Deposit Co.* v. *Brush, supra,* it was said " 'It has been said that the true test of a contractor is that he renders service in the course of an independent occupation, following his employer's desires in the results, but not in the means used (1 Shearman & Redfield on Negligence, 6th ed., 396), but in weighing the control exercised we must carefully distinguish between authoritative control and mere suggestion as to detail or the necessary co-operation where the work furnished is part of a larger undertaking. (*Standard Oil Co.* v. *Anderson,* 212 U. S. 221, 222, [53 L. Ed. 480, 29 Sup. Ct. Rep. 252, see, also, Rose's U. S. Notes].) The same principles are announced in *Fink* v. *Missouri Furnace Co.,* 82 Mo. 276, [52 Am. Rep. 376].' "

[1] Applying the principles of the foregoing authorities to the instant case it becomes apparent that Reeves was an independent contractor and not an employee. As we have seen, he was engaged in the "truck business," which is an independent occupation, and not only had his own patronage, but had taken over Ferguson's as well. He had his own truck and was doing a general hauling business. Flickenger merely told him what he desired to have hauled and Reeves loaded his truck in his own way at times suited to his own convenience; he never reported before going to work or after; no one controlled his actions at any time, except that he was expected to do a full day's work. Reeves was obliged to furnish his own appliances and pay all expenses in the opera-

tion of the truck and was not subject to any "authoritative control" at any time. In other words, Flickenger was interested only in the result to be attained, but not in the means by which it was to be accomplished.

We may now consider whether a different result will be reached if we accept the definition of an "independent contractor" as it appears in section 8 (b) of the Compensation Act of 1917. That section divides persons who render service into two classes: "Employees" and "independent contractors." All persons rendering service are employees except those who render service *"other than manual labor, for a specified recompense* for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished."

[2] We are of the opinion that the effect of this definition is to restrict the term "independent contractor" and consequently enlarge to a corresponding degree the meaning of the term "employee." To apply the test "other than manual labor" and exclude thereby from the classification of "independent contractors" all those persons who perform manual labor, and bring them into the classification of "employees," is a distinct enlargement of the latter class, and a consequent extension of the jurisdiction of the Industrial Accident Commission beyond the limits of the original constitutional grant of authority to the legislature. (Const., art. XX, sec. 21.) And, likewise, if we give effect to the phrase "for a specified recompense," as it appears in section 8 (b), we are bringing into the definition of what constitutes an independent contractor an element which, according to the foregoing authorities, did not exist at the time of the adoption of the constitutional amendment, and which was not a part of the definition prior to the passage of the Compensation Act of 1917. That the effect of this clause would be to enlarge the meaning of the term "employee" and thus extend the jurisdiction of the Industrial Accident Commission needs no demonstration. Though if we make the test by applying the rule to the facts in the instant case it at once becomes apparent that the decedent would have been the employee of Flickenger and not an independent contractor, for the service he performed was not "for a specified recompense." [3] If this view be correct, and we entertain no doubt that it is, section 8 (b) must be held to be unconstitutional to the extent which we have indi-

cated that it is an attempt to enlarge the jurisdiction of the commission.   This court in a recent decision in passing upon the constitutionality of section 30 of the Workmen's Compensation Act of 1917, speaking through Mr. Justice Wilbur, had this to say: "The terms 'employers,' 'employees,' and 'employment' as used in section 21, article XX, of the constitution, as amended in October, 1911, must be construed in the light of their meaning at the time of the adoption of the amendment and cannot be extended by legislative definition, for such extension would, in effect, be an amendment of the constitution, if accepted as authoritative." (*Pacific Gas & Electric Co.* v. *Industrial Acc. Com.*, 180 Cal. 497, [181 Pac. 788].)

[4]   Respondents contend, however, that "if any doubt remains upon the question of constitutionality, it has been removed by the adoption by the people in 1918 of a new constitutional amendment authorizing workmen's compensation, which definitely ratifies and affirms the scope of the act." While it is not so designated, the reference must be to section 21 of article XX, as amended in 1918.   But there is no merit in this contention.   It is sufficient to point out that this constitutional provision went into effect eight months after Reeves was killed and six months after the commission decided this case, and consequently can have no application here.

It follows that the award must be annulled, and it is so ordered.

Wilbur, J., Lennon, J., Shaw, J., Melvin, J., Olney, J., and Angellotti, C. J., concurred.