ANDREW B. PEER, Respondent, *v.* CHARLES H. BABCOCK et al., Appellants, Impleaded with Another.

Master and servant — negligence — collision between truck loaded with coal and wagon in which plaintiff was riding caused by negligence of truck driver — when evidence insufficient to show that relation of master and servant existed between owners of coal yard and truck driver — erroneous charge — issue not raised by pleadings cannot be considered on appeal.

1. Where a firm of coal dealers did not own or maintain trucks, horses or wagons for delivering coal to their customers, but gave such deliveries to truckmen and had no relation to or authority over such truckmen, merely gave them written slips indicating the place of delivery, and paid them by the ton when coal was delivered, the truckman was not a servant or employee of the coal dealers, but was a carrier for hire. The relation of master and servant did not exist, either as matter of law or fact, between the dealers and the truckman, hence the dealers are not liable for injuries to plaintiff caused by a collision between one of such trucks loaded with defendants' coal and the wagon in which plaintiff was riding and it was reversible error for the trial court to charge as matter of law that the truckman was the employee of the coal dealers, and if he was guilty of negli-

gence and the plaintiff free from contributory negligence, the coal dealers as well as the truckman would be responsible.

2. The jury reported a verdict against the dealers, thus exonerating the plaintiff and the truckman from negligence and holding the dealers guilty of negligence. The effect of such verdict under the law of the case as charged by the trial justice would be to relieve not only the truckman but also the dealers from liability. (*Pangburn v. Buick Motor Co.*, 211 N. Y. 228, followed.)

3. The judgment against the coal dealers cannot be sustained upon the ground that the driveway from the coal yard to the street was so steep and in such a condition that when horses, with a loaded truck, once started down the grade they would collide with any vehicle which was then in the street and that this was negligence for which the coal dealers are accountable and in fact was the maintenance of a nuisance. *Held,* that such contention is untenable because the complaint contains no allegation tendering any issue except the one that the injury of plaintiff was due to the negligence of the truckman for which the coal dealers were responsible.

*Peer* v. *Babcock*, 187 App. Div. 925, reversed.

(Argued October 12, 1920; decided November 30, 1920.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered February 14, 1919, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George A. Benton* for appellants. It was error for the judge to charge as matter of law that the relation between Pizzo and Babcock and May was that of master and servant. (*Butler* v. *Townsend,*126 N. Y. 105; *King* v. *N. Y. C. & H. R. R. R. Co.*, 66 N. Y. 181; *Murray* v. *Dwight*, 161 N. Y. 301; *Powers* v. *Mass. H. Hospital*, 109 Fed. Rep. 294; *Long* v. *Richmond*, 66 App. Div. 468.) Under the judge's charge it became the law of the case that the relation of master and servant between Babcock and May and Pizzo existed. The verdict of the jury in favor of Pizzo as matter of law was one equivalent to finding no cause of action against the appellants (Babcock

and May). Therefore judgment founded on such verdict cannot stand and is contrary to law. (*Pangburn* v. *Buick Motor Co.*, 211 N. Y. 228; *N. O. & M. E. R. R. Co.* v. *Jopes*, 142 U. S. 18.) The pleadings were drawn, the case tried and submitted to the jury under the theory of *respondeat superior*, based upon the relation of master and servant. It is error to sustain the judgment upon any other ground. The maxim *secundum allegata et probata* compels the judgment to stand or fall upon the theory of the pleadings and the trial. (*Walrath* v. *H. F. Ins. Co.*, 16 N. Y. 220; *Wright* v. *Delafield*, 25 N. Y. 266; *Brighton* v. *Clafin*, 180 N. Y. 76; *Reilly* v. *Connable*, 214 N. Y. 586; Baylies Code Pleading & Practice [2d ed.], 42; *Railway Co.* v. *Robinson*, 133 N. Y. 242; *Bennitt* v. *Johnson*, 21 N. Y. 238.)

*Glenn L. Buck* and *Charles F. Doehler* for respondent. The maintenance and operation by Babcock and May of the coal yard and scales immediately adjacent to the street in such a condition that the horses having once started down the steep grade of the driveway, must instantly collide with any vehicle which was then in the street, was negligence for which Babcock and May are accountable and, in fact, was the maintenance of a nuisance. (*Wilson* v. *American Bridge Co.*, 74 App. Div. 596; *Weitzmann* v. *Barber Asphalt Co.*, 190 N. Y. 456; *Wittleder* v. *Citizens El. Ill. Co.*, 50 App. Div. 478; 47 App. Div. 410; *Heeg* v. *Licht*, 80 N. Y. 579; *Driscoll* v. *Newark, etc., Co.*, 37 N. Y. 637.) The charge that the relation of master and servant had been established was not error. (*Long* v. *Richmond*, 66 App. Div. 468.)

HOGAN, J. This action was brought by plaintiff against the defendants above named to recover damages for personal injuries resulting to him by reason of an accident that occurred in the city of Rochester, July 30, 1917. Defendants Babcock and May are copartners

engaged in the coal business in the city of Rochester under the firm name of H. H. Babcock & Co. As bearing upon the nature of the action and the basis of an alleged right to recover herein it is essential that reference be made to the complaint which contains the following allegations:

"That the said defendants Babcock and May are engaged in the business of selling (and delivering) coal in the said city of Rochester and have and maintain for the purpose of said business a coal yard situated at No. 505 North Street in said city of Rochester, and that the said defendants Babcock and May also have, maintain, control and operate for the purpose of said business teams of horses, wagons and drivers; that one of the drivers that the said defendants Babcock and May have, control and maintain is the defendant Guiseppe Pizzo.

"That on or about the 30th day of July, 1917, at about 9.30 o'clock A. M., while this plaintiff was seated in a wagon drawn by a horse, which was being driven by a person other than the plaintiff, and who was driving the said horse and wagon in a careful and prudent manner in a southerly direction on the west side of the said North Street, and was about to pass the entrance of said defendants Babcock and May's coal yard at No. 505 North street in said city of Rochester, through the negligence, fault and carelessness of these defendants herein and without any fault, negligence and carelessness of this plaintiff, a team of horses attached to a wagon belonging to the defendants ran into and struck the wagon in which the plaintiff was riding throwing the plaintiff out of the wagon on to the pavement and crushing him between the said wagon and the pavement. * * *

"That by reason of the plaintiff's said injuries caused wholly and entirely by negligence, fault and carelessness of the defendants as aforesaid this plaintiff was obliged to and did incur large expenses * * * did suffer pain," etc.

The answer of defendants Babcock and May denied

that they have maintained, controlled and operated for the purpose of their business teams of horses, wagons and drivers and that defendant Pizzo was a driver controlled and maintained by defendants and affirmatively alleged that Pizzo was an independent contractor and was not the servant or agent of said defendants.

The defendant Pizzo answered separately and by a denial of the allegations of the complaint above quoted put the same in issue.

Substantially all evidence offered by plaintiff before he rested had reference to the circumstances surrounding the accident and the extent of the injuries he sustained. The only evidence adduced by him upon the subject of the relations between Babcock and May and Pizzo was the testimony of Mr. Roberts, an employee of Babcock & Co., who testified that he had a record of a load of coal that "was on Pizzo's wagon about nine thirty the morning of the accident." "A regular delivery slip kept by the Babcock Co." The slip was offered and received in evidence, marked Exhibit 1 and reads: " H. H. Babcock & Co. Scranton coal. General office 106–107 Wilder Building, No. 89,065. Rochester, N. Y., 7–30–1917. Deliver to E. L. White at 97 Alliance, 4 tons Stove, Driver Pizzo, Received by . . . . . . . Please report at the office any rudeness or negligence on the part of the Drivers."

The plaintiff having rested, counsel for defendants Babcock and May made a motion to dismiss the complaint and urged in support thereof " that there is absolutely nothing here to show any connection between this driver (Pizzo) and this accident and the defendants Babcock and May. There is no connection showing that Babcock and May had any jurisdiction over the driver. They have failed completely to establish any relation of master and servant.

" The Court: Except this ticket here. About the only evidence here is this ticket which has just been put in

evidence. I think there is just enough to call on you to make your proof. Motion denied, exception."

The evidence bearing upon the subject of the relations between the parties is substantially as follows:

The defendant Pizzo was called as a witness in his own behalf and upon direct examination testified that he had been in the coal business about six years, that he was a driver of a team and coal wagon. The remainder of his direct examination was confined to the circumstances surrounding the accident. Upon cross-examination he identified the slip Exhibit No. 1, which the trial justice held was *prima facie* evidence of a relation of master and servant, and testified that the slip was not delivered to him until after the accident happened and up to the time he received the same had no knowledge as to where the load of coal on his wagon was to be delivered; that he had drawn coal for the H. H. Babcock & Co. the first time for three years; he then went to work for the Drake Coal Company; afterwards and about three months prior to the accident returned to Babcock & Co. On the day of the accident he arrived at the yard about nine o'clock in the morning. He saw Mr. Roberts in the office and the latter told him to put on four tons. He always delivered a load of coal at such places as he was told as indicated on a slip.

Upon redirect examination he testified that he was paid by the ton for delivery of coal and any helpers required by him he employed and paid. Aside from the place of delivery of coal no directions were given to him as to the route he should take. When he got work he worked every day, but in the event that he failed to report for work, he did not receive any compensation. He owned the team and wagon. Neither his name nor the name of the Babcock & Co. appeared on the wagon. Other people were delivering coal from the same yard in the manner he employed.

The evidence of Mr. Roberts was to the effect that

drivers including Pizzo are paid for delivery of coal by the ton, sixty cents per ton shoveled off, ninety cents per ton carried in. There are a number of teamsters engaged in drawing coal. They come there to the yard and are told what to load and after putting on a load " we give them a delivery slip and tell them where delivery is to be made. No other instructions are given them and we have no jurisdiction of them after they leave the yard. The men drawing coal are paid for the work performed at the end of the week upon presentation of delivery slips. As to any specified time when they are to report for work we cannot govern them in that sense, they come when they want to and go when they want to. Pizzo has no hours whatever. When he comes we give him work. I engaged Pizzo and agreed to pay him by the ton. I told him where coal was to be delivered. A number of people are drawing coal when we have coal. I do not tell teamsters what time to get there in the morning. I have no restrictions on them. I have no control of their actions at all after they leave the yard. The Babcock Co. does not own or have any interest in the team or wagon of Pizzo. Had Pizzo taken coal otherwise than as directed we would hold him responsible for the coal. A duplicate of the slip is delivered to the purchaser. Had Pizzo insulted a purchaser and it had been reported, any redress I would have would have been to discharge him. By discharging him I mean discontinue our relations, not give him more work. If we had coal and orders for same and Pizzo did not show up until noon, I don't know that I would have something to say about it. That is a condition that you cannot regulate with a class of men like coal drivers. You are glad to get them whenever you can."

At the close of the case defendants-appellants' counsel renewed the motion made at the close of plaintiff's case to dismiss the complaint, which motion was denied and exception noted.

The sole theory of the action as framed by the complaint was that the relation of master and servant existed between the defendants Babcock and May and the defendant Pizzo. The trial justice in his charge to the jury correctly stated: " The defendant who is directly charged with the alleged negligent act is the defendant Guiseppe Pizzo, and the defendants Babcock and May are made parties on the theory that they were his employer and that they are therefore liable for his wrongful act or omission. The claim here is that Pizzo was employed by Babcock and May and that what he did or omitted to do was done in the performance of his duties as such employee and therefore Babcock and May are responsible for his acts."

Later in the instructions to the jury the trial justice charged: " that as matter of law the relation between Pizzo and Babcock and May was that of master and servant and that for any wrongful act of Pizzo constituting negligence during the performance of his duties as a servant of Babcock and May they would be liable equally with him  *  *  *  so that you will approach the case with the rule laid down for you that Pizzo was the employee of Babcock and May and that if he was guilty of negligence and the plaintiff was free from contributory negligence, Babcock and May as well as Pizzo would be responsible, and if there was no negligence on the part of Pizzo, or if there was contributory negligence on the part of Peer, then there can be no recovery."

The exception taken to the charge was sufficient to challenge correctness of the same.

The jury reported a verdict in favor of plaintiff against Babcock and May and in favor of defendant Pizzo, thus exonerating plaintiff and defendant Pizzo of negligence and holding Babcock & Company guilty of negligence. The effect of the verdict under the law of the case as charged by the trial justice would be to relieve not only

8

Pizzo but Babcock & Company from liability. (*Pang-burn* v. *Buick Motor Co.*, 211 N. Y. 228.)

The charge above quoted was not only erroneous but a review of the record leads to a conclusion that the evidence was as matter of law insufficient to establish as between Babcock and May and Pizzo the relation of master and servant.

In *Wyllie* v. *Palmer* (137 N. Y. 248, 257) this court speaking through Judge FINCH commended the rule laid down in Shearman & Redfield on Negligence (4th ed., p. 259): " He is to be deemed the master who has the supreme choice, control and direction of the servant, and whose will the servant represents, not merely in the ultimate result of his work but in all its details. The payment of an employee by the day, or the control and supervision of the work by the employer, though important considerations, are not in themselves decisive of the fact that the two are master and servant."

Again in *Butler* v. *Townsend* (126 N. Y. 105, 108) the same judge writing for the court, said: " The relation exists where the employer selects the workman, may remove or discharge him for misconduct, and may order not only what work shall be done, but the mode and manner of performance.."

The facts adduced upon the trial of the instant case are not within the principles of law as stated by this court. Babcock & Company in their business as coal dealers had numerous orders for coal. They did not own or maintain trucks, horses or wagons by which delivery of coal could be made. A number of truckmen including Pizzo were in the habit of making deliveries of coal to customers of Babcock & Company. They were free to make such deliveries at their pleasure and were not subject to the directions of Babcock & Company in respect of the time they should work or the manner in which the same should be accomplished. They were at liberty to work for whomsoever they pleased and for such length

of time as suited them. Babcock & Company were powerless to prescribe hours of employment for the truckmen, the latter came to the coal yard at such times as they were not otherwise employed and were disposed to work, and when they worked it was only for such length of time as they desired so to do. If helpers were necessary in the delivery of coal, they were selected and paid by the truckman, whose compensation was by the ton. On the morning in question Pizzo was told to load four tons of coal. He had no information as to the place of delivery until after the accident. The practice was to deliver to a truckman a slip indicating the place of delivery after the coal had been weighed, but no directions were given as to the route to be traversed to make a delivery, neither did Babcock & Company have or exercise jurisdiction over them after they left the yard. Had Pizzo or any truckman delivered coal at the wrong address he would be held personally responsible for the same. The name of Babcock & Company did not appear on Pizzo's wagon.

The evidence is insufficient to establish that the relation of master and servant existed between Babcock & Company and Pizzo. Rather does the evidence disclose that on the morning in question Pizzo was an applicant for work, and when told to put four tons of coal on his wagon he did so with the implied understanding that he would deliver the same in the usual manner and for the same compensation theretofore paid for a like service. Such employment clearly falls within that peculiar or special employment characterized in *Murray* v. *Dwight* (161 N. Y. 301). In effect he was a carrier for hire, and Babcock & Company was powerless to control and direct the work or the manner or method of doing the same. (*Moore* v. *Stainton*, 80 App. Div. 295; affirmed here on opinion of Appellate Division, 177 N. Y. 581. To like effect is *Hanatsek* v. *Wilson*, 161 App. Div. 634.)

Counsel for respondent seeks to have the judgment

sustained upon the proposition that " the maintenance and operation by Babcock & Company of their coal yard and scales immediately adjacent to the street in such a condition that the horses having once started down the steep grade of the driveway must instantly collide with any vehicle which was then in the street was negligence for which Babcock & Company are accountable and in fact was the maintenance of a nuisance."

We may safely assume that *locus in quo* and the facts surrounding the happening of the accident were well known to the plaintiff's attorney when he framed the complaint in this action. An examination of the complaint fails to disclose an allegation tendering an issue of the nature contended for, or any issue other than the one stated by the trial justice first above quoted. True, the complaint does allege that " through the negligence, fault and carelessness of these defendants herein and without any fault, negligence and carelessness of the plaintiff, a team of horses attached to a wagon belonging to the defendants ran into and struck the wagon in which plaintiff was riding * * *. That by reason of the plaintiff's said injuries caused wholly and entirely by negligence, fault and carelessness of the defendants as aforesaid * * *." The language quoted from the fourth and fifth paragraphs of the complaint must be read in connection with the context of the complaint found in the second paragraph of the pleading, which alleges in effect that the injury to plaintiff was due to the negligence of Pizzo for which Babcock & Company as master was responsible, and cannot be construed as alleging a primary liability of Babcock & Company in the maintenance and operation of the coal yard and scales adjacent to the street and driveway in such negligent manner as to constitute a nuisance. No such issue was tendered by the pleadings. The action was not brought against the defendants as joint tort feasors, but as charged by the trial justice in the first instance upon the theory

that the relation between them was that of master and servant.

Counsel for respondent further contends that the primary negligence of Babcock & Company was submitted to the jury and that the verdict rendered established such liability. The trial justice instructed the jurors as follows: " The case is based upon negligence and the plaintiff is required to show by a fair preponderance of evidence that the defendant Pizzo or the defendants Babcock and May if you find there was any negligence on their part in the manner of the construction and location of this scale were guilty of negligence." After argument of the motion for a new trial, the justice in an opinion denying the motion wrote that there was evidence in the case from which the jury might find that Babcock and May were negligent independently of their liability for the acts of defendant Pizzo. " The greater part of the charge relates to the liability of Babcock and May as employers, but there is a reference to their liability independent of this relationship," viz., the language above quoted.

The trial justice had already charged the jury " the defendant who is directly charged with the negligent act is the defendant Pizzo and the defendants Babcock and May are made parties on the theory that they were his employers and that they are therefore liable for his wrongful act or omission. * * * The claim here is that Pizzo was employed by Babcock and May, and that what he did or omitted to do that day was done in the course of the performance of his duties as such employee, and that therefore Babcock and May are responsible for his acts." The plaintiff's counsel did not take exception to that portion of the charge. The defendants likewise acquiesced therein. The law of the case thus stated we approve. The later charge under consideration was inconsistent with the law governing the case already charged. If, as stated by the justice, Pizzo was the

defendant directly charged with the negligent act and Babcock and May were made parties to the action on the theory that they were his employers, that is, in a derivative character, it is difficult to appreciate how such relationship was transformed into a primary liability on the part of Babcock and May, especially in view of the charge that if Pizzo was not negligent, plaintiff could not recover. The absence of an exception to the portion of the charge under consideration prevents further comment upon the same.

The errors pointed out to which exceptions were taken are of substance and require a reversal of the judgment.

The judgment and order should be reversed and a new trial granted, with costs to abide the event.

POUND, J. (dissenting). By the test adopted by the prevailing opinion, I think that Pizzo was as matter of law hired by Babcock & Co. as their servant to deliver the coal in question. If he had been called in by them for an occasional job the case would have been different, but he was, and for three months prior to the accident had been, one of their teamsters regularly employed as such. He was in no sense an independent truckman serving the public generally.

No exception presents to this court the question of Babcock & Co.'s primary liability which was obscurely submitted to the jury but was, it would seem, the basis of their verdict. Accordingly I vote to affirm the judgment appealed from, with costs.

HISCOCK, Ch. J., COLLIN, McLAUGHLIN, ANDREWS and ELKUS, JJ., concur; POUND, J., reads dissenting memorandum.

Judgments reversed, etc.