## SOUTHERN SURETY CO. v. SHOEMAKE.
(No. 1136—5419.)

Commission of Appeals -of Texas, Section B.
Feb. 12, 1930.

T. H. McGregor and A. L. Love, both of Austin, for plaintiff in error.

N. C. Walker, of San Saba, for defendant in error.

Jas. A. King, of Austin, amicus curiæ.

RYAN, J. This case originated in the district court of San Saba county, and was brought by the Southern Surety Company, to set aside an award of the Industrial Accident Board in Shoemake's favor, he having sustained personal injuries by a cave-in of the gravel pit in which he was loading his truck. There was judgment for the defendant, sustaining the award, which was affirmed by the Court of Civil Appeals.

The Southern Surety Company issued an insurance policy under the Workmen's Compensation Act to J. R. Horn & Sons, who were constructing a hotel building in the town of San Saba, Tex. Shoemake was hauling gravel to be used in such construction and injured while loading his truck.

The evidence shows that Shoemake applied to E. H. Horn for a job hauling gravel to be used in running a concrete foundation for such hotel building; at that time Horn & Sons were using gravel from several pits, hauled by different parties who owned their own trucks, and some by a truck belonging to Horn & Sons, driven by one of their employees. Horn advised Shoemake to hang around a day or two, as he thought one of his gravel haulers was about to quit. On the afternoon of November 22, 1927, one of the gravel haulers did quit, and went with Shoemake to Horn's office and notified him to that effect. Horn then told Shoemake that he wanted him to go to work at once, that the job would last from 10 to 15 days, and he would pay $1.50 per yard for the hauling. Shoemake then built a dump bed for his own truck, with which he did the hauling and employed and paid his own labor to load and unload his truck. At his request, Horn loaned him shovels to load the truck. Horn told him to haul from the Allison pit, but had no one there to direct or supervise the loading. When Shoemake brought the gravel to the hotel site, Horn or his agent inspected it, directed where to unload it, and issued Shoemake a ticket entitling him to be paid for the quantity of gravel delivered and accepted. No fixed amount of gravel was ever agreed to be hauled, no specified time was fixed in

which Shoemake was to work or stop hauling, but he was paid only for what gravel he actually delivered and was accepted.

Mr. Shoemake testified that he received the injuries on Friday morning, and that he had worked on the day before, which was Thanksgiving Day, although Horn had shut down for the day. He also testified that on Thursday morning he employed a man whose name he did not remember to work for him that day, and employed another man named Willard Moore for $3.50 per day to work for him, and also employed a Fred Moore at $3 per day. They were to help him load and unload. There was nothing said about who should pay for the gravel.

After the conclusion of the evidence, the Southern Surety Company moved for an instructed verdict, which was overruled.

The question decisive of the case is: Was Shoemake at the time of his injury an employee of Horn & Sons within the meaning of the Workmen's Compensation Act, or was he an independent contractor?

Under section 1, art. 8309, Rev. Stat. 1925 (Workmen's Compensation Act), the term "employee"—applicable to this case—means "every person in the service of another under any contract of hire, expressed or implied, oral or written * * * except one whose employment is not in the usual course of trade, business, profession or occupation."

As said in Shannon v. Western Indemnity Co. (Tex. Com. App.) 257 S. W. 522, 523, "The term 'employee' as used in this act may be said to have a broader and more liberal meaning than the word "servant,' as that term has been generally understood, in this, that it was intended to include all those in the service of another whether engaged in the performance of manual labor, or in positions of management and trust, and whether being paid wages or a salary, so long as they remained under the ultimate control of the employer * * * to constitute one an 'employee' in the meaning of the compensation laws, there must exist between the parties the relation of master and servant, in the broad sense that the one has the right of ultimate control and direction over the other. When one is employed by another, it may be generally said to be in the relation of servant to master, or as an independent contractor. This being true, the courts in nearly every instance have undertaken to determine the relation of the person employed by another by first deciding whether or not such person was an independent contractor. If he was found

not to be such under all the facts and circumstances, then he was classed as a servant or employee."

Our Supreme Court, in Cunningham v. I. R. R. Co., 51 Tex. 503, 32 Am. Rep. 632, and Wallace v. S. O. O. Co., 91 Tex. 18, 40 S. W. 399, defines an independent contractor as one whom the employer has no right to control as to the manner in which the work is to be done, or the means by which it is accomplished.

The rule is admirably stated in Street on Personal Injuries, §§ 11 and 12, thus: "No better test can be applied than to say that the relation of master and servant exists where the master retains or exercises the power of control in directing, not merely the end sought to be accomplished by the employment of another, but as well the means and details of its accomplishment; not only what shall be done, but how it shall be done."

Applying this rule, there remains no doubt whatever that Shoemake, at the time of his injury, was not an "employee" of Horn & Sons, but was an independent contractor. He owned the truck with which the work was done, he did the work according to his own ideas and method, he employed the necessary help, he worked when and as he pleased, and chose his own hours and times of labor. He was not under the control of Horn & Sons in respect to the details of the work. Horn & Sons were concerned only in the gravel from the Allison pit after it was delivered to, and accepted by, them, and agreed to pay Shoemake so much money per load only as and when delivered. The quantity to be delivered and the times of delivery were as Shoemake willed, and, if no gravel was delivered, he was to receive no compensation. They in no manner had any supervision or control over Shoemake, except to tell him from what pit to get the gravel and at what spot to unload it when he got to the hotel building in San Saba.

It follows, therefore, that Shoemake cannot recover. We therefore recommend that the judgments of the district court and Court of Civil Appeals be reversed, and judgment be here rendered in favor of plaintiff in error.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and judgment rendered for the plaintiff in error, as recommended by the Commission of Appeals.