## LUMBERMEN'S RECIPROCAL ASS'N v. DENSON et al.

### No. 2425.

Court of Civil Appeals of Texas. Beaumont.
June 29, 1933.

King, Wood & Morrow and H. E. Cox, all of Houston, for appellant.

Wm. McMurrey, of Cold Spring, for appellee.

WALKER, Chief Justice.

This was a compensation suit, under the provisions of our Workmen's Compensation Act, articles 8306, 8307, R. S. 1925, as amended (see Vernon's Ann. Civ. St. arts. 8306, 8307). Quincy Crook was the alleged employer; appellant, Lumbermen's Reciprocal Association, the insurance carrier; Sam Denson, deceased, the employee; and appellee, Luetishie Denson, the statutory beneficiary. The case was filed in the district court of San Jacinto county, as an appeal by Lumbermen's Reciprocal Association from an adverse award of the Industrial Accident Board. After the suit was filed, Wright Morrow was made a party plaintiff, as the receiver of Lumbermen's Reciprocal Association. Under the pleadings and undisputed proof Sam Denson was killed while making railroad ties for Quincy Crook. It was the contention of appellants that, under the undisputed proof, at the time he received the injuries which resulted in his death, Sam Denson was not an employee of Quincy Crook but was an independent contractor. This contention was denied in the lower court and judgment was entered in favor of Luetishie Denson and her attorney for the sum of $2,415,93, from which appeal was duly prosecuted to this court.

There was no controversy in the evidence on the issue of the relation of Sam Denson to Quincy Crook, which was to the following effect: Sam Denson, deceased, was a farmer, operating a farm adjacent to 1,400 acres of timberland owned by Quincy Crook. He knew that Quincy Crook was making railroad ties out of the timber on this 1,400 acres of land and that Crook would pay any one, going on such tract and making ties according to certain specifications, the sum of 18 cents per tie, provided the ties came up to certain specifications. Sam Denson knew the required specifications and knew that it was not necessary to see Quincy Crook and make a special contract before entering upon the land to make the ties. Sam Denson had made ties for Quincy Crook before at various times over a period of six or eight years. On the day of his death, without communicating in any way with Quincy Crook or the latter's

agent, Sam Denson left his farm and went upon the 1,400 acres of land for the purpose of making ties. It was his purpose to use his own tools, working such hours and at such time as he saw fit; he was not in any manner under the control or supervision of Quincy Crook or Crook's agents, servants, or employees, as to the manner in which he did the work or as to any of its details; the only connection existing between Sam Denson and Quincy Crook was merely an assumption by Denson, warranted by the facts, that Crook would pay him or any other person cutting ties on the 1,400 acres of land the sum of 18 cents per tie for such ties as by due inspection were made under the proper specifications. It should be further said that Sam Denson could cut ties upon any part of the 1,400 acres of land and from any hardwood timber upon the land at his discretion; however, the testimony was that the tie makers did not cut the large hardwood trees. Whether he worked an hour or two hours or more per day was at his will, as was also the number of days per week he worked. He was not answerable to Quincy Crook in any way as to time, work, tools used, or timber cut. The only limitation upon Sam Denson was: (a) The height of the stumps, (b) the specifications for his ties, and (c) the general agreement that the tie makers would not cut the large hardwood trees. The only obligation upon Quincy Crook was to inspect the ties and pay for such as were properly made.

As testified to by Andrew Durden, Sam Denson met his death in the following manner: "I was with him when he died. He and I were making ties and had started to make ties and of course the first tree we cut it fell against a dead snag and when the tree hit the snag it began rocking and it broke back and it fell on him. It killed him right immediately. We were making ties for Mr. Quincy Crook."

Under the facts stated, Sam Denson, deceased, was making the ties according to his own methods, free of control as to the manner in which and the means by which the work was done, and responsible and answerable to Crook only as to the result of his work. It follows that he was not an "employee," as that term is defined by our Workmen's Compensation Act (article 8309, § 1), but an "independent contractor" within the rule, stated as follows by Judge Critz, speaking for the Commission of Appeals, in Lone Star Gas Co. v. Kelly, 46 S.W.(2d) 656, 657:

"As defined by the authorities, an independent contractor is one, who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer except as to the result of his work. 14 R. C. L. p. 67, par. 2. Different authorities define the term with some variations in language, but the above definition is

the same in meaning as that given by all the accepted authorities.

"It may further be said that an independ.ent contractor is one whom the employer has no right to control as to the manner in which the work is done, or the means by which it is accomplished. Southern Surety Company v. Shoemake (Tex. Com. App.) 24 S.W.(2d) 7."

For the reasons stated the judgment of the lower court is reversed, and judgment here rendered for appellants.

Reversed and rendered.