· TRADERS & GENERAL INS. CO. v.
JONES et al.

No. 13375.

Court of Civil Appeals of Texas.
Fort Worth.

May 8, 1936.

Rehearing Denied June 12, 1936.

W. C. Boyd, of Denton, and Chester B. Collins, of Fort Worth, for appellant.

Brent C. Jackson, of Denton, and Lightfoot & Robertson and Nelson Scurlock, all of Fort Worth, for appellees.

DUNKLIN, Chief Justice.

The Independent Supply Company, engaged in the business of purchasing and selling oil well pipe and other drilling supplies in the town of Gladewater, Tex., carried liability insurance with the Traders & General Insurance Company, Inc., in accordance with the provisions of the Workmen's Compensation Law (Vernon's Ann. Civ.St. art. 8306 et seq.). O. Bendorf was employed by the supply company to visit different portions of the state for the purpose of buying and selling oil well supplies. Eugene Jones, who owned a truck and was engaged in the trucking business for hire in and around Breckenridge, was employed by Bendorf to haul a load of oil pipe from a point near the town of Breckenridge to the supply company's place of business in Gladewater. On the trip to Gladewater, Jones was killed in an accident, on November 19, 1933, on the public highway in Denton county.

This suit was instituted by his father, George A. Jones, and his sister, Hazel Jones, against the insurance company to recover compensation under the Workmen's Compensation Law, and from a judgment in their favor the defendant has appealed.

Plaintiffs' suit was upon the theory that Eugene Jones was an employee of the supply company within the meaning of the Workmen's Compensation Law, and was therefore entitled to compensation as therein provided.

The chief defense was that Jones was not a servant or employee, but was an independent contractor in his undertaking to haul the pipe with which his truck was loaded at the time of his death.

At the conclusion of the evidence, the defendant moved for an instructed verdict in its favor, which motion was overruled and the case was submitted to the jury on special issues.

The following definitions were given by the trial court, in connection with special issues submitted:

"An 'employer' is any person, firm, partnership, association of persons, or corporation, or their legal representatives that make contracts of hire."

"An 'employe' is any person in the service of another under a contract of hire, expressed or implied, oral or written except one whose employment is not in the usual course of trade, business, profession or occupation of his employer."

"By the term 'injury' is meant damage or harm to the physical structure of the body and such disease or infection as naturally results therefrom."

"By the term 'injuries sustained in the course of his employment' is meant that such injuries must have accrued within the period of the employment in a place where the employe reasonably may be in the performance of his duty, and while he is fulfilling that duty or engaged in doing something incidental thereto."

The jury returned findings as follows:

(1) Eugene Jones was an employee of the Independent Supply Company at the time of his death on November 19, 1933;

(2) "The Independent Supply Company, Inc., had control over Eugene Jones so as to be able to direct all the details of the carrying out of the work the said Eugene Jones was doing at the time of his injuries and death."

(3) The injuries and death of Eugene Jones were sustained by him while in the course of his employment for the Independent Supply Company.

(4) Hazel Jones, sister of Eugene Jones, was a dependent on him according to an unchallenged definition of the term "dependent."

(5) There was a further finding that the average weekly wage of an employee engaged in the same class of work as that of Eugene Jones for the year preceding his death was $25 net, and that plaintiffs were entitled to a lump sum settlement.

Upon that verdict judgment was rendered in favor of plaintiffs against the defendant in the sum of $4,886.18, one-third of which was awarded to their attorney, Chester B. Collins, for his services in representing them in the suit.

The following facts were proven without contradiction: Eugene Jones was 25 years of age; owned the truck which he was using at the time of his death, and all expenses of his trip were paid by himself, in accordance with the terms of his employment; he was employed by O. Bendorf, the sales agent for the supply company, to haul the pipe from a point near Breckenridge to Gladewater and there deliver it to the

supply company. He was to be paid for his services at the rate of 37½ cents per hundredweight of the load. Eugene Jones did not have a permit from the Railroad Commission to operate his truck at the time of his death, and did not give any bond for public liability, as required by the Railroad Commission, but he carried insurance on his truck at the time he was killed, all at his own expense. Before he started on the trip, Bendorf gave him an invoice for delivery to the supply company at Gladewater, showing the place from which the load was carried and the amount of pipe. This was in accordance with the custom usually followed by Bendorf when such shipments were made. When the pipe was delivered to the supply company, its custom was to deliver to the trucker its receipt therefor, which would be cashed by Bendorf upon its delivery to him by the trucker on his return trip.

Bendorf had purchased the pipe from the Texas Company and when he employed Eugene Jones to take it to Gladewater he told him where to get the pipe and also agreed to meet him at that place. He did meet Jones according to that agreement and Jones loaded the pipe on the truck in accordance with Bendorf's instructions, and Bendorf then instructed him to take the pipe to Gladewater and there deliver it to the supply company, and Bendorf testified as follows:

"Q. Was he to unload the pipe when he got to Gladewater? A. Well, smoetimes we —we sometimes give them a helper, I imagine, when he gets there.

"Q. How is that? A. He is supposed to help unload.

"Q. He is supposed to help unload? A. That is right."

According to Bendorf's uncontradicted testimony the supply company did not own the truck, did not agree to furnish any oil or gas for the trip, or to make any repairs on the truck, or to pay any of the expenses of the trip, and did not reserve any control over Jones while he was making the trip. He further testified that he would sometimes ship secondhand pipe bought at Breckenridge to Gladewater by train; at other times he would ship it by truck.

J. H. Draper, witness for the plaintiffs, testified that before Eugene Jones started on the trip Bendorf told him "to be sure to go by the way of Jacksboro in order to miss the traffic; that he was in a hurry to get the pipe down there as he had another load to go out and to be back by 4 o'clock, if possible, the following day." Bendorf denied making those statements.

Plaintiff George Jones testified that about a month after his son's death he applied to Bendorf for work hauling pipe.

"Q. I will ask you if on that occasion you asked Mr. Bendorf if he would give you some work to do with your truck and if he in turn asked you if you had any insurance on your truck, and after you told him no, if he then said to you that he couldn't give you any work? A. Yes.

"Q. I will ask you if then you said, 'Mr. Bendorf, you employed my son, Eugene Jones, and he didn't have any insurance.' And if Mr. Bendorf said to you, 'At the time we had your son, Eugene Jones, hired or employed we had complete control of him, but we had to discard that plan, or idea, because it cost too much insurance. A. Yes, sir."

In reply to appellant's assignment of error to the refusal of the court to instruct a verdict in its behalf, this is said in appellees' brief:

"The evidence in this case, if a jury desired to believe it, showed that Independent Supply Company had control of all the details of the work Eugene Jones was performing at the time of his death, and we submit a list of them as follows:

"The Independent Supply Company through its agents and representatives, (a) told Eugene Jones where to get pipe, (b) how to carry pipe, namely, in truck, (c) when to get pipe, (d) how to load pipe, (e) where to carry the pipe, (f) when to arrive there, namely, 'take it now to Gladewater', (g) what place at Gladewater, (h) where to unload after he reached the place at Gladewater, (i) how to go, that is, what route to take to Gladewater, namely, through Jacksboro, and (j) when to arrive back for the next load."

The burden was upon the plaintiffs to sustain by a preponderance of the evidence their allegations that Eugene Jones was an employee of the supply company at the time he was killed, and we have reached the conclusion that they failed to discharge that burden. To the contrary, we believe that the facts recited above show conclusively that the undertaking of Eugene Jones to haul and deliver the pipe was that of an independent contractor. Many authorities are cited by counsel for both parties, but all of them agree on the same test

192

to be applied to determine whether one engaged to do a service is a contractor or an employee.

In King v. Galloway (Tex.Com.App.) 284 S.W. 942, 944, numerous definitions are given of the term "independent contractor," which are quoted with approval, but all of which were substantially to the same effect. One of those definitions was in 19 A.L.R. p. 235, as follows: "An independent contractor is a person employed to perform work on the terms that he is to be free from the control of the employer as respects the manner in which the details of the work are to be executed."

Another definition is taken from Cunningham v. Railroad Co., 51 Tex. 503, 510, 32 Am.Rep. 632, as follows: "In the first relation, that of master and servant, the master has the right to direct the conduct of the servant and the mode and manner of doing the work, and hence his corresponding liability for an improper execution of the same. * * * 'He is deemed the master who has the supreme choice, control, and direction of the servant, and whose will the servant represents not merely in the ultimate result of the work, but in all its details.'"

Also the following: "In every case which turns upon the nature of the relationship between the employer and the person employed, the essential question to be determined is not whether the former actually exercised control over the details of the work, but whether he had a right to exercise that control."

The decision just quoted from was cited with approval by Judge Critz, of the Commission of Appeals, in Lone Star Gas Co. v. Kelly, 46 S.W.(2d) 656, 657, in which this is said:

"It may further be said that an independent contractor is one whom the employer has no right to control as to the manner in which the work is done, or the means by which it is accomplished. Southern Surety Co. v. Shoemake (Tex.Com. App.) 24 S.W.(2d) 7. On the other hand, it is held that the relation of master and servant exists where the master retains or exercises the power of control in directing, not merely the end sought to be accomplished by the employment of another, but, as well, the means and details of its accomplishment; not only what shall be done, but how it shall be done. * * *

"In other words, the relationship of master and servant depends, not on the exercise of control over the work, but the right to exercise such control. King v. Galloway (Tex.Com.App.) 284 S.W. 942."

Many other decisions cited by appellant are to the same effect, including Security Union Ins. Co. v. McLeod (Tex.Com.App.) 36 S.W.(2d) 449; Carter Publications v. Davis (Tex.Civ.App.) 68 S.W.(2d) 640, writ of error refused; Southern Surety Co. v. Shoemake (Tex.Com.App.) 24 S.W. (2d) 7; Manning v. Texas Employers' Insurance Ass'n. (Tex.Civ.App.) 67 S.W.(2d) 389; Dave Lehr, Inc. v. Brown (Tex.Com. App.) 91 S.W.(2d) 693.

The case last cited was a suit against Dave Lehr, Inc., for personal injuries sustained by Jimmy Brown as a result of being struck by a truck driven by one Mariano Valderrano while hauling sand for the defendant, who was a dealer in sand, gravel, and other commodities. We quote the following from that opinion:

"At the time Valderrano went to work for defendant, he owned his own truck and was engaged in the distinct occupation of a 'truck driver,' whose business was the hauling of materials and goods for others for hire. He not only furnished his own truck, but paid the expense of upkeep and costs of operation. Defendant was engaged in the business of buying and selling rock, gravel, sand, cement, and other materials. The delivery of these materials to purchasers was made by owners and drivers of trucks, such as was Valderrano. * * * At the time Valderrano went to work for defendant there was no agreement that he was to continue hauling for any specific length of time or that defendant was under obligation to furnish him any definite quantity of materials for hauling. He was requested to be at defendant's place of business about 7 o'clock a. m., if he wanted to do any hauling, and was given materials to haul as orders were received or when defendant needed his services as hauler. He was free to leave when he chose and return when he chose, and could haul for others if he desired. He loaded his own truck, operated it in his own way, and unloaded same by himself. If he needed help in any of these particulars, he employed it himself. He was given instructions as to amount of material to load and where it was to be delivered. He was furnished a ticket to be signed by the purchaser to show delivery of the material. It was shown that drivers of trucks were generally given instructions to use the

most practical and direct route, in order to facilitate prompt delivery, and were also instructed to observe traffic laws, to drive slowly in passing schools and churches, and to give proper signals in turning corners; but it is not definitely shown that Valderrano had been given such instructions. * * *

"At the time of the accident on September 20, 1929, Valderrano had been hauling for defendant two days. On September 18th he hauled ten loads and on September 19th he hauled seven loads. The accident happened about noon of September 20th.

"In the case of Shannon v. Western Indemnity Co., 257 S.W. 522, the Commission of Appeals carefully reviewed many authorities and formulated a general standard by which, in most instances, it may be determined whether or not one employed by another to do work or to perform a service is an employee or is what is usually termed an independent contractor. This case has been many times cited by our courts and the courts of other jurisdictions. Tested by the principles announced in that case, we think the facts of the present case not only negatived the contention that Valderrano was the servant of defendant, but affirmatively show that he was engaged in what has been termed by the New York courts as a 'special employment,' analogous to that of an independent contractor. Peer v. Babcock, 230 N.Y. 106, 129 N.E. 224. In that case the facts were very similar to the facts of the present case, and among other things the court, as shown by the syllabus, held as follows: 'A truckman hauling coal for coal dealers and using his own team and wagon in making deliveries to their customers at his own pleasure at a certain rate per ton, the places being indicated on delivery slips given to him, held to be a carrier for hire, and not an employee, for whose negligence, causing a collision, the dealers would be liable.'

"In the Shannon Case it is pointed out that the independent quality of an agreement of employment may in practically all cases be inferred from the two circumstances that the party is engaged in a distinct and generally recognized employment, and his stipulated remuneration is to be determined with reference to some quantitative standard. Both of these circumstances are present in this case, as well as are other strong circumstances, such as the fact that Valderrano was not employed for any continuous service, but for specific hauls, and such as the fact that he could work when he pleased and could quit when he pleased.

"Plaintiffs contend, however, that there were circumstances showing control over Valderrano by defendant which were sufficient to overcome the conclusive effect of the circumstances mentioned above. With this we do not agree. The control which defendant exercised over Valderrano was for the purpose of seeing that the work was properly and expeditiously done and proper results accomplished, and this manner of general control over an independent contractor does not result in making him a servant. Carter Publications v. Davis (Tex. Civ.App.) 68 S.W.(2d) 640 (writ of error refused), and Security Union Insurance Co. v. McLeod (Tex.Com.App.) 36 S.W.(2d) 449.

"Certainly, it seems to us, the instructions given by defendant to Valderrano to observe the traffic laws and to drive slowly by schools and churches cannot be regarded as an exercise of control in the manner and method of doing the work. They are to be regarded as precautionary, and are in consonance with the warnings and advice usually given to many persons by those who are anxious to promote safety in traffic.

"The following additional cases are in point: Southern Surety Co. v. Shoemake (Tex.Com.App.) 24 S.W.(2d) 7, and Flickenger v. Industrial Accident Commission, 181 Cal. 425, 184 P. 851, 19 A.L.R. 1150."

██ In the above decision the leading authorities relied on by both parties to this case were discussed and analyzed and the conclusions reached are controlling in this case in favor of the appellant upon the issue of independent contractor, since the pertinent facts involved are substantially to the same effect in both cases. And in line with the decision last cited, we conclude that not only did plaintiffs fail to discharge the burden of proof of the allegation that Eugene Jones was an employee of the supply company, but the facts conclusively overcome that allegation, and, therefore, the court erred in refusing defendant's motion for an instructed verdict in its favor.

Accordingly, the assignment to the refusal of appellant's motion for an instructed verdict in its favor is sustained and the judgment of the trial court is reversed and judgment is here rendered in favor of appellant, without a determination of the mer-

194

its of other assignments, which, if sustained, would require a remand of the case for another trial, at all events, except the one which challenges the trial court's refusal to submit appellant's requested issue inquiring whether or not in the agreement between Eugene Jones and the Independent Supply Company for the hauling of the load of pipe in question it was understood that the supply company should have the right to direct the details as to how the job was to be performed; and which assignment we believe to be meritorious.

Reversed and rendered.

## On Motion for Rehearing.

We have given careful and studious consideration of the able and exhaustive argument presented by counsel for appellees in their motion for rehearing and the decisions there cited and the facts chiefly relied on to distinguish this case from the Lehr Case (Dave Lehr, Inc. v. Brown), 91 S.W.(2d) 693, 694 (Tex.Com.App.), and other decisions cited in our original opinion, and which it is insisted bring this case within the rule announced in decisions relied on by appellees here, and particularly the opinions of Justice Speer of the Commission of Appeals in Texas Employers' Insurance Association v. Owen, 298 S.W. 542, and the opinion of Judge Powell in King v. Galloway (Tex.Com.App.) 284 S.W. 942. The facts stressed here are that Jones was told by Bendorf, who employed him, to haul pipe, when and where he was to get it, how to load it, the road to travel, where he was to carry it, to whom he was to deliver it and when he was to return for another load.

We believe that those instructions were merely incidental to the company's contract of employment and not sufficient to fix the legal status of Jones as an employee or servant rather than as independent contractor. While similar facts were recited in the two decisions last referred to, yet there were also other pertinent facts, and from all such facts taken as a whole, the conclusion was reached that the persons employed were not independent contractors, but employees within the meaning of the Workmen's Compensation Law. Those decisions and all others relied on by appellees recognize the tests for determining the issue announced in all the cases and the favored one is quoted by Judge Speer in the Owen Case from the opinion of Judge German (Tex.Com.App.) in Shannon v. Western Indemnity Company, 257 S.W. 522, which, as said in the Lehr opinion "has been many times cited by our courts and the courts of other jurisdictions." Other tests of like import are quoted in our original opinion.

With those tests as our guide, we are unable to escape the conclusion reached on original hearing that plaintiffs failed to discharge their burden of proving that at the time of his death Eugene Jones was an employee of the Indemnity Supply Company; to the contrary, we believe the evidence shows conclusively that he was an independent contractor.

The motion for rehearing is overruled.