DAVE LEHR, INCORPORATED, V. JIMMIE BROWN ET AL.

No. 6534. Decided March 15, 1936.
Rehearing overruled April 15, 1936.
(91 S. W., 2d Series, 693.)

*Cunningham, Moursund, Johnson, Rogers & Slatton,* of San Antonio, for plaintiff in error.

The Court of Civil Appeals erred in affirming the judgment of the trial court in this case, as the uncontradicted and undisputed evidence establishes as a matter of law that Valderrama, the truck driver, at the time of the accident was an independent contractor and not an employee of Dave Lehr, Incorporated. Southern Surety Co. v. Moore, 27 S. W. (2d) 837; Security Union Ins. Co. v. McLeod, 36 S. W. (2d) 449; Lone Star Gas Co. v. Kelly, 46 S. W. (2d) 656.

*Perry J. Lewis, H. C. Carter, Champe G. Carter, Randolph L. Carter,* all of San Antonio, for defendants in error.

The evidence of the issue of employee and independent contractor clearly raised a disputed issue of fact upon which the jury verdict is conclusive. Drivers of trucks are employees when they furnish and maintain their own trucks and were paid by the load. Texas Employers Ins. Assn. v. Owen, 291 S. W., 940, and 298 S. W., 542; McElwrath v. Dixon, 49 S. W. (2d) 995.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

This was a suit by Jimmie Brown and others against Dave Lehr, Inc., for damages sustained by reason of the said Jimmie Brown being struck by a truck driven by one Mariano Valderrama. A judgment in favor of plaintiffs was affirmed by the Court of Civil Appeals. 58 S. W. (2d) 886. The only question we are called upon to consider here is the question of whether or not Valderrama was, at the time of the accident, an employee of Dave Lehr, Inc., so as to make it liable under the doctrine of respondeat superior. The company will be referred to as defendant.

The agreement between Valderrama and defendant, under which Valderrama began work, was verbal and extremely simple in its terms. Considered alone, it means but little so far as an understanding of the true relationship existing between them

was concerned. It is therefore necessary to consider fully the situation of the parties before and after Valderrama began work, and all of the facts and circumstances touching the relationship between them and the extent of control exercised over Valderrama by defendant. For this reason we do not think it can properly be said that if there is any evidence—such as isolated circumstances and statements by witnesses in the nature of conclusions—to sustain the finding of the jury to the effect that Valderrama was an employee of defendant, the finding should be upheld. We think the nature of the contract and the legal effect of same can only be determined by consideration of all the facts and circumstances in the case.

At the time Valderrama went to work for defendant he owned his own truck and was engaged in the distinct occupation of a "truck driver," whose business was the hauling of materials and goods for others for hire. He not only furnished his own truck but paid the expense of upkeep and costs of operation. Defendant was engaged in the business of buying and selling rock, gravel, sand, cement and other materials. The delivery of these materials to purchasers was made by owners and drivers of trucks, such as was Valderrama. The truck drivers were paid by the load at the rate of 50 cents for the first mile and 5 cents for every quarter mile thereafter. At the time Valderrama went to work for defendant there was no agreement that he was to continue hauling for any specific length of time or that defendant was under obligation to furnish him any definite quantity of materials for hauling. He was requested to be at defendant's place of business about 7 o'clock a. m.; if he wanted to do any hauling, and was given materials to haul as orders were received or when defendant needed his services as hauler. He was free to leave when he chose and return when he chose, and could haul for others if he desired. He loaded his own truck, operated it in his own way and unloaded same by himself. If he neded help in any of these particulars he employed it himself. He was given instructions as to amount of material to load and where it was to be delivered. He was furnished a ticket to be signed by the purchaser to show delivery of the material. It was shown that drivers of trucks were generally given instructions to use the most practical and direct route, in order to facilitate prompt delivery, and were also instructed to observe traffic laws, to drive slowly in passing schools and churches, and to give proper signals in turning corners, but it is not definitely shown that Valderrama had been given such instructions. While there

are statements in the evidence to the effect that Valderrama could have been "fired" for failure to observe these instructions, it is obvious that what was meant was that defendant could merely refrain from giving him further work to do if he desired. At the time of the accident on September 20, 1929, Valderrama had been hauling for defendant two days. On September 18th he hauled ten loads and on September 19th he hauled seven loads. The accident happened about noon of September 20th.

■ In the case of Shannon v. Western Indemnity Co., 257 S. W., 522, the Commission of Appeals carefully reviewed many authorities and formulated a general standard by which, in most instances, it may be determined whether or not one employed by another to do work or to perform a service is an employee or is what is usually termed an independent contractor. This case has been many times cited by our courts and the courts of other jurisdictions. Tested by the principles announced in that case we think the facts of the present case not only negatived the contention that Valderrama was the servant of defendant, but affirmatively show that he was engaged in what has been termed by the New York courts as a "special employment," analogous to that of an independent contractor. Peer v. Babcock, 230 N. Y., 106, 129 N. E., 224. In that case the facts were very similar to the facts of the present case and among other things the court, as shown by the syllabus, held as follows:

"A truckman hauling coal for coal dealers and using his own team and wagon in making deliveries to their customers at his own pleasure at a certain rate per ton, the places being indicated on delivery slips given to him, held to be a carrier for hire, and not an employee, for whose negligence, causing a collision, the dealers would be liable."

In the Shannon case it is pointed out that the independent quality of an agreement of employment may in practically all cases be inferred from the two circumstances that the party is engaged in a distinct and generally recognized employment, and his stipulated remuneration is to be determined with reference to some quantitative standard. Both of these circumstances are present in this case, as well as are other strong circumstances, such as the fact that Valderrama was not employed for any continuous service, but for specific hauls, and such as the fact that he could work when he pleased and could quit when he pleased.

■ Plaintiffs contend, however, that there were circumstances showing control over Valderrama by defendant which were sufficient to overcome the conclusive effect of the circumstances mentioned above. With this we do not agree. The control which defendant exercised over Valderrama was for the purpose of seeing that the work was properly and expeditiously done and proper results accomplished, and this manner of general control over an independent contractor does not result in making him a servant. Carter Publications v. Davis, 68 S. W. (2d) 640 (Writ of error refused), and Security Union Insurance Co. v. McLeod, 36 S. W. (2d) 449. Nor does the fact that the defendant, if Valderrama had disobeyed instructions, could refuse to give him further work have any substantial evidentiary value in determining the question. As was very aptly stated by the Supreme Court of Iowa in the case of Norton v. Day Coal Co., 192 Iowa, 160, 180 N. W., 905, where the facts were very similar to the facts of this case:

"There was no right to discharge because, as said, claimant had virtually the status of a drayman. Plaintiff could not tell when he came whether he would get any work. He was not obliged to accept any that was offered. He was at all times at liberty to haul for others rather than defendant. The most that could be done was to refrain from giving him coal to deliver. The only power the defendant had was to elect whether he should be given work and how long it should continue. There was the right to interrupt or terminate the contract, but not to discharge."

Certainly, it seems to us, the instructions given by defendant to Valderrama to observe the traffic laws and to drive slowly by schools and churches cannot be regarded as an exercise of control in the manner and method of doing the work. They are to be regarded as precautionary, and are in consonance with the warnings and advice usually given to many persons by those who are anxious to promote safety in traffic.

The following additional cases are in point: Southern Surety Co. v. Shoemaker, 24 S. W. (2d) 7, and Flickenger v. Industrial Accident Commission, 181 Cal., 425, 184 Pac., 851, 19 A. L. R., 1150.

The judgments of the Court of Civil Appeals and of the trial court are reversed and judgment is here rendered in favor of plaintiff in error.

Opinion adopted by the Supreme Court March 18, 1936.

Rehearing overruled April 15, 1936.