Lloyd W. Davidson, State's Atty., of Austin, for the State.

KRUEGER, Judge.

Appellant was convicted of the offense of possessing intoxicating liquors containing alcohol in excess of one-half of 1 per centum by volume, for the purpose of sale, and his punishment was assessed at a fine of $150 and confinement in the county jail for a term of six months.

The information, omitting the formal parts, charges that on or about the 18th day of April, A. D., 1936, Link Greenway did then and there unlawfully, and before the making and filing of the complaint herein filed, possess for the purpose of sale intoxicating liquors, a liquor containing alcohol in excess of one-half of 1 per centum by volume, the possession of such liquor for the purpose of sale in said Jones county, having been theretofore and was then and there prohibited in Jones county, Tex., by the laws of said State, contrary to the statutes in such cases made and provided and against the peace and dignity of the State.

Since the repeal of article 16 (section 20) of the Amendment to the Constitution of this State the sale of intoxicating liquors is not a violation of the law where the seller has a permit or license to engage in said business unless the county or political subdivision thereof in which said liquors are sold had prior to the adoption of said constitutional amendment or since its repeal, by a majority vote of the qualified voters of such county or political subdivision thereof at an election held for that purpose voted to prohibit the sale of such liquors. In the absence of an allegation showing that the statute of what was formerly called the "local option" was in force at the time of the commission of the alleged offense, the information is insufficient. See Whitmire v. State (Tex. Cr.App.) 94 S.W.(2d) 742; Schmidt v. State (Tex.Cr.App.) 94 S.W.(2d) 743; Privitt v. State, 98 S.W.(2d) 204, decided November 12, 1936, but not yet reported [In State report], where the question is fully discussed.

It is therefore ordered that the judgment of the trial court be reversed and the prosecution dismissed.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.

## SCHEUING et al. v. CHALLISS et al.
### No. 9861.

Court of Civil Appeals of Texas. San Antonio.

Oct. 21, 1936.

Rehearing Denied Dec. 9, 1936.

Leonard Brown and Russell B. Wine, both of San Antonio, for appellants.

Moursund, Moursund & Bergstrom, Frederick C. Felty, and William E. Remy, all of San Antonio, for appellees.

MURRAY, Justice.

This suit was instituted by Carolyn Challiss, a widow, and her children against George W. Scheuing, John H. Scheuing, and J. H. Wigley, seeking to recover damages arising from the death of her husband, James Courtney Challiss, who was killed when he was struck by an ice truck driven by one Crit Lowe.

The trial was before a jury and resulted in a judgment in favor of Carolyn Challiss and her three children in the sum of $10,000, from which judgment George W. Scheuing and John H. Scheuing have prosecuted this appeal, no appeal being taken by J. H. Wigley.

The contention of the appellants is that J. H. Wigley was not their employee, but an independent contractor, and that Lowe was an employee of Wigley's and not of theirs. No questions are raised as to the negligence of Lowe, nor as to the amount of the recovery; thus we have before us the question of whether, under the facts in this case, Wigley, as a matter of law, was an independent contractor. The jury found, as a matter of fact, that Wigley was an employee, and, of course, if the evidence supports this finding, it would be binding upon this court.

The facts, briefly stated, are as follows: The Scheuings were operating an ice business under the assumed trade-name of Harlandale Ice Manufacturing Company. Wigley was delivering to retail customers ice manufactured by this company, and doing so in a truck owned by the ice company. The company received, for the use of the truck, 5 cents per hundred pounds of ice hauled in the truck. Wigley's compensation was the difference between the wholesale price and the retail price of the ice. In other words, Wigley either paid, or was charged, 20 cents per hundred for all ice which he received from the company. He sold this ice to the customers at the prevailing retail price, which was posted upon a blackboard at the factory, and, after paying for the ice and the use of the truck, retained the balance for his services in peddling the ice. Wigley was given a designated territory within which to solicit customers and deliver ice. The company had at times as many as eighteen persons delivering ice on the same terms as Wigley, with the exception that only three were using trucks belonging to the company. All the others owned their own trucks. All were paid in the same manner, with the exception that those who operated company trucks were required to pay for the use of the trucks at the rate of 5 cents per hundred pounds of ice handled. The three persons operating the company owned

trucks were required to do so-called "hot shotting" or, in other words, make special deliveries of ice in the afternoon. The three operators of the company owned trucks decided among themselves which one on each respective day would remain at the factory to do the "hot-shotting" on that particular day. They were paid for "hot-shotting" on the same basis as the regular deliveries. Drivers were expected at the factory between 6 and 7 o'clock in the morning to get their ice. They were instructed to drive carefully. On one occasion they were instructed where to get ice when the factory was broken down.

John Scheuing testified that he had the right to fire drivers, and Wigley, in his testimony, stated that he was driving for the company.

The drivers of the company trucks kept the trucks at their homes at night, and sometimes used them for their own pleasure, but this was against the instructions of Scheuing. All gasoline and oil used in the company trucks was paid for by the drivers, and the drivers also paid for minor repairs on the trucks. However, major repairs were paid for by the company.

As above stated, the question here presented is whether under all these facts Wigley was an employee of the ice company, or, on the other hand, was an independent contractor. If the evidence is sufficient to raise the question of employee vel non, then the trial judge properly submitted the question to the jury, and their finding to the effect that Wigley was an employee is determinative of the matter, and the company is bound by the finding, but, on the other hand, if the evidence shows that, as a matter of law, Wigley was an independent contractor, then Lowe, being employed by Wigley, would not be the employee of the ice company, and there could be no basis for recovery in this case.

■■ In a very recent decision by the Commission of Appeals, in, Smith Bros., Inc., v. O'Bryan, 94 S.W.(2d) 145, 148, opinion written by Judge German, we find the following discussion as to the distinction between an independent contractor and an employer and employee:

"There are many and varying definitions of an, employee and of an independent contractor. These definitions themselves, as well as expressions in the, opinions wherein they are found, clearly show that it is practically impossible to formulate a fixed rule or formula for determining whether or not a person doing work for another is an employee or an independent contractor. The definitions formulated by the courts in many instances include, or give emphasis to, some evidentiary element which may not in all cases be a controlling factor. This is due to the fact that the presence of certain evidentiary facts is held to be controlling in certain cases, while dominant weight has been given to certain other evidentiary facts in other cases; and definitions have often been formulated in the particular case to more clearly meet the situation presented in that case. In our opinion, the simplest and perhaps the most accurate definition, abstractly speaking, of an independent contractor, is that suggested by the annotator in 'General discussion of the nature of the relationship of employer and independent contractor' in 19 A.L. R. pp. 226 to 275, and is as follows: 'An independent contractor is a person employed to perform work on the terms that he is to be free from the control of the employer as respects the manner in which the *details* of the work are to be executed.' (Italics ours.)

"Our decisions have for a long time emphasized the necessity of control over the details of the work to be done and the means by which it is done in order to create the relationship of master and servant. For instance, in many cases the courts have adopted the language quoted in Cunningham v. International Railroad Co., 51 Tex. 503, 510, 32 Am.Rep. 632, from Shearman and Redfield on Negligence, to wit: 'He is deemed the "master" who has the supreme choice, control and direction of the servant, and whose will the servant represents not merely in the ultimate result of the work, but in *all its details*.' (Italics ours.)

"In Shannon v. Western Indemnity Co. (Tex.Com.App.) 257 S.W. 522, 523, the following quotation from Street on Personal Injuries. was quoted with approval: 'No better test can be applied than to say that the relation of master and servant exists where the master retains or exercises the power of control in directing, not merely the end sought to be accomplished by the employment of another, but as well the *means* and *details of its accomplishment;* "not only what shall be done, but how it shall be done." ' (Italics ours.)"

■ We conclude, from the facts as above set forth and the law as above stat-

ed, that Wigley was an independent contractor and not the employee or servant of the ice company. The ice company did not undertake to control the details of the work to be done, but only the result to be accomplished. Wigley solicited his own customers; he covered his route in such manner as he saw fit. After paying 20 cents a hundred for the ice and after paying for his gasoline, oil, and minor repairs to the truck, any balance remaining out of the retail price of the ice belonged to Wigley. If he secured many customers and sold a great deal of ice, he had a large profit; if he allowed his route to run down and only sold a small amount of ice, his profit was little. If he extended credit and failed to collect, the loss was his, not the company's.

It was explained by Scheuing that what he meant when he stated he had the right to fire drivers was that, if they proved unsatisfactory, he could refuse to deal with them further, and thereby terminated his agreement with them. The entire record shows that this was all he could do in this regard.

The fact that the drivers were given a designated territory, or that they were told what time to come for their ice, and instructed how to drive, or the fact that the drivers were required to do so-called "hot shotting," or in fact that they were directed where to get ice when the factory broke down, or the fact that Wigley said he was driving for the company, or the fact that Scheuing referred to his right to fire the drivers, does not show such control over the details of the work to be accomplished as to render Wigley a servant of the ice company, but, on the contrary, the evidence shows Wigley to be, an independent contractor.

We feel that the case above cited, Smith Bros., Inc., v. O'Bryan and the case of Dave Lehr, Inc., v. Brown (Tex.Com. App.) 91 S.W.(2d) 693, are directly in point, and preclude any doubt in this case as to the fact that Wigley was, as a matter of law, an independent contractor and not an employee of the Harlandale Ice Manufacturing Company.

Accordingly, the judgment will be reversed, and, as the facts seem to be fully developed, the judgment will be here rendered that the appellees take nothing.

Reversed and rendered.