## LINDEN LUMBER CO. v. JOHNSTON.
### Nos. 13880, 13939.

Court of Civil Appeals of Texas.
Fort Worth.

April 21, 1939.

Rehearing Denied May 19, 1939.

Newland, Cornett & Whitworth, of Linden, and Mayo W. Neyland, of Greenville, for appellant.

Wren & Jeffrey, of Fort Worth, for appellee.

BROWN, Justice.

Appellee having sued appellant for damages, occasioned by an accident in Hunt County, in which a truck collided with a private car operated by appellee, appellant filed its plea of privilege to be sued in Cass County, its domicile; the plea was overruled, exception and appeal taken, and subsequently being put to trial on the merits, judgment was rendered for appellee, plaintiff; and the defendant below appealed. Both appeals were taken to the Court of Civil Appeals for the Texarkana District, and the causes were transferred by the Supreme court to this court.

By consolidation, we permitted the causes to be presented in one brief, for the sake of expediency and to lessen somewhat the labors of counsel.

It follows that should the plea of privilege be found to be well taken, the judgment on the merits must be reversed and the cause remanded to the District Court of Cass County for a new trial.

The validity of the judgment of the trial court on the plea of privilege depends upon the establishment of the fact that the driver of the truck involved in the collision was an employee of appellant, Linden Lumber Company.

On the other hand, if R. A. (Raymond) Morse owned the truck and was an independent contractor, who has contracted with Linden Lumber Company to haul lumber for it, to be delivered to its customers, and to haul back to said company any return loads, and that R. A. Morse was paid for this work on some agreed freight rate scale, and that he employed the drivers and paid them out of his earnings, then the plea of privilege is well taken.

The undisputed testimony shows that the truck involved in the collision was reg-

istered in the name of R. A. Morse, and that he purchased it in his name; that the driver of the truck was employed by him and paid by him; that appellant owned and used no trucks for hauling lumber to customers; that R. A. Morse contracted with appellant to haul lumber for it and to deliver same to its customers at approximately freight rates.

Over against this direct and undisputed evidence appellee sought to have the plea of privilege overruled on the following theory and evidence: That the contract of hiring between appellant and R. A. Morse constituted Morse an employee and not an independent contractor.

The evidence touching the contract of hiring is from the lips of Wesley Morse, president of appellant, who said that he made an oral contract with R. A. Morse when the mill started operations, whereby R. A. Morse was to do the hauling for the mill, at approximately fixed freight rates; that the lumber company owns no trucks used for hauling lumber to customers, and bears no portion of the expense of operation of the trucks; that R. A. Morse receives no salary from the lumber company and has no income other than that which is paid him for hauling lumber; that the lumber company exercises no supervision over or control of the trucks or their drivers, and has nothing to do with the types or sizes of trucks used.

This testimony was corroborated in detail by R. A. Morse, who testified further that he did not restrict his hauling activities to that of serving appellant, but that he hauled for other persons.

Appellee also contends that irrespective of the said contract of hiring, R. A. Morse was not in legal effect an independent contractor because the operations under the contract were unlawful for two reasons, viz: (1) The trucks were operated by R. A. Morse without his having procured a permit from the Railroad Commission of Texas, and (2) the trucks carried excessive loads, in violation of the state law governing same.

The undisputed evidence disclosed that R. A. Morse had no such permit and had never applied for same, and that Wesley Morse had never made any inquiry to ascertain whether or not R. A. Morse had procured the same.

Likewise, the undisputed evidence shows that if any excessive load was placed on any truck, it was done at the suggestion of the truck driver, and that there never was any agreement between R. A. Morse and appellant to violate the law governing the amount of lumber to be hauled.

The next contention is that appellant exercised such authority and control over the drivers of the trucks as that this constitutes the drivers appellant's employees.

The facts urged to support such contention are: That an employee of appellant loads and counts the lumber as it is placed upon the trucks; that appellant notifies the truck driver when and where to "spot" his truck; that when the truck is loaded, appellant's employee orders the driver to chain down the load and to get out of the way, so as to let another truck in; that appellant's employee makes up a "ticket", which constitutes the driver's instructions with respect to the name of the purchaser, the place where the lumber is to be delivered, etc.; that one C. C. Morse, an employee and officer of appellant corporation, instructs all drivers with respect to return loads, if any, and that instructions are given from appellant's office for all truck drivers to get in touch with said C. C. Morse at Dallas, Texas, regarding any return loads; that at times, while on the road, the truck drivers talk with Wesley Morse (appellant's president) over the telephone in regard to the payment of fines for traffic violations; and that appellant carries a policy of Workmen's Compensation Insurance which covers the drivers of these trucks.

■ Finally, it is contended that the contract of hiring was not bona fide, but was a mere sham, subterfuge and pretense.

Assuredly this contention placed the burden upon appellee to sustain such an issue.

■ Adverting to the principal issue before us, we are of opinion that the undisputed evidence shows that R. A. Morse owned the truck, involved in the accident. It was purchased by him and was registered in his name. He employed the driver. We conclude that the proof established as a matter of law that R. A. Morse was an independent contractor.

■ We hold that the control which Linden Lumber Company exercised over the truck driver and over R. A. Morse and the operation of his trucks was for the purpose of seeing that the work was properly and expeditiously done and proper results accomplished, and that such general control as has been shown, here, over the

independent contractor and his truck driver does not result in making either Morse or the truck driver a servant of Linden Lumber Company.

Our views are supported by the following well considered cases: Southern Surety Co. v. Shoemake, Tex.Com.App., 24 S. W.2d 7; Cocke & Braden v. Ayer, 129 Tex. 660, 106 S.W.2d 1043; Dave Lehr, Inc. v. Brown et al, 127 Tex. 236, 91 S.W. 2d 693; Security Union Ins. Co. v. McLeod, Tex.Com.App., 36 S.W.2d 449; Smith Bros. v. O'Bryan, 127 Tex. 439, 94 S.W.2d 145.

We wish to observe that in Southern Surety Co. v. Scheel et al., 125 Tex. 1, 78 S.W.2d 173, the further fact was brought out that the truckmen had the privilege of hauling back, on return trips, any goods previously shipped and rejected by purchasers; and that in Carter Publications, Inc. v. Davis, Tex.Civ.App., 68 S.W. 2d 640, writ refused, it was held that the appellant had the right to assume that the independent contractor was qualified to transport the papers, or that he would qualify himself, or would employ some one to do the work who was qualified, and that the failure of the independent contractor to do these very essential things did not render the contract void.

■ We are unable to see how the fact that an independent contractor is guilty of a violation of the law, in performing his contract, would change the status of the parties and render such contractor a servant. The relation of master and servant must be created by the parties by mutual agreement that is either expressed or implied. Such relationship cannot be forced upon the parties in the absence of a mutual agreement, either expressed or implied.

■ We do not believe that the statements made by the truck driver and his helper were admissible to show agency or the ownership of the truck. 2 Tex.Juri. p. 523, sect. 125; 17 Tex.Juri. p. 551, sec. 228.

In Stokes Bros. et al. v. Thornton, Tex. Civ.App., 91 S.W.2d 756, wherein only the statements of the agent were relied upon, as is evident in this case, the rule is applied.

See, also, Webb-North Motor Co. v. Ross, Tex.Civ.App., 42 S.W.2d 1086, writ dismissed; Lewis v. J. P. Word Transfer Co., Tex.Civ.App., 119 S.W.2d 106 writ refused, which cites with approval the last two above cited authorities.

■ We can attach no importance to the testimony of the witness who said that after the accident, the truck driver, at his request, showed him the registration receipt issued on the truck, and that it was issued to Linden Lumber Company, when the receipt was admitted in evidence and shows that same was issued to R. A. Morse. The human memory is a vehicle altogether too frail to permit the mere recollection of a witness to overcome and destroy the existence of and the very essence and import of a written instrument, more especially when such instrument is one that is issued by a public officer, in the discharge of his duty.

Being of the opinion that the plea of privilege is well taken, the judgment of the trial court overruling such plea is reversed and the cause is remanded, with instructions to transfer same to the District Court of Cass County, Texas.

The judgment as to the plea of privilege being reversed, it follows that the judgment of the trial court on the merits should be and it is reversed and the cause remanded to the District Court of Cass County, Texas.

### On Motion for Rehearing.

■ We have considered carefully the long and well prepared motion for rehearing presented by appellee.

Among other arguments made, it is urged that no writ of error will lie in this cause.

We do not think this contention sound, for the following reasons: The trial court heard the cause on the plea of privilege and overruled such plea. An appeal was taken from such order and then the trial court set and heard the cause on its merits and, judgment having been rendered, an appeal was taken from such final judgment. These causes were then consolidated in the Court of Civil Appeals.

We have concluded that the plea of privilege is well taken and we then declined to pass upon the issues presented in the appeal from the judgment on the merits, but reversed such judgment and remanded the cause to the District Court of Cass County.

If we are in error in sustaining the plea of privilege, then it is obvious that we should consider the appeal from the judgment on the merits and we should either affirm such judgment or reverse and re-

mand the cause to the District Court of Hunt County.

It would seem to us that the Supreme Court, under such a record, has jurisdiction to pass upon the merits of an application for a writ of error bottomed upon the declination of this court to consider the issues presented in the appeal from the judgment on the merits; such declination being predicated on our ruling holding the plea of privilege well taken.

The appeal before us does not simply involve the merits of a plea of privilege, but it involves the merits of a final judgment rendered in the main case.

We can see no difference in the situation presented here in the consolidated causes on appeal and that of a case where the plea of privilege is overruled, the parties put to trial immediately upon the merits, and an appeal from final judgment in which the merits of the plea of privilege and those of the main case are all presented in one breath on appeal.

It seems to us that to take any other position would be a denial of a substantial right to a diligent litigant.

As an illustration of our position, see Gilmer v. Graham, Tex.Civ.App., 26 S.W. 2d 687, in which a writ of error was granted and the judgment reversed and remanded by the Supreme Court, in 52 S.W.2d 263. See, also, McNeill v. Simpson et al., Tex.Civ.App., 24 S.W.2d 485, in which a writ of error was granted and the judgment affirmed by the Supreme Court, 39 S. W.2d 835.

We have gone into the contentions urged in the motion and do not believe them well taken.

We do not believe that the inferences raised by the evidence are sufficient to overcome the plain stated facts, which are given support in the evidence by proof that does not depend upon oral testimony of any interested party.

■ The fact that through an arrangement Linden Lumber Company carried the employees of Raymond Morse in its Workmen's Compensation Insurance policy, does not make such persons employees of the Lumber Company.

It is quite true that the insurance carrier would not be heard to deny liability to Raymond Morse's employees, but this, in our opinion, would be predicated upon the ground that the insurance carrier was put in possession of the true facts and, having issued the policy of insurance and accepted the premiums, it would be estopped to deny liability.

■ We are unable to see the distinction between a certified copy of the registration receipt issued by the Tax Collector of Cass County and the original receipt delivered by such officer to Raymond Morse, which covered the truck that was involved in the accident. .

No one should seriously contend that a certified copy of a tax receipt, issued by a county tax collector, is not worthy of full faith and credit in any court in Texas, in the absence of the original receipt.

It is undisputed that Raymond Morse purchased and owns all of the trucks that do the hauling; that he pays for them out of his earnings; that he pays for all repairs, unkeep and operating expenses; that his account in the bank is separate and distinct from the account of Linden Lumber Company; that he pays the truck drivers out of his earnings; that he hires and discharges the drivers; that he is paid for the hauling of all lumber at approximately freight rates; that the Lumber Company carries the account on its books showing what Raymond Morse earns with the trucks and charging Raymond Morse with all items paid out by the Lumber Company, which are properly chargeable to him; that the only control exercised over the trucks drivers by the Lumber Company was that which, in the orderly conduct of the business, merely accomplished the purpose of seeing that the work was properly and expeditiously done and proper results accomplished, by the contractor's employees.

We do not believe that the inferences shown and the facts developed are sufficient to make out a prima facie case of master and servant between the Lumber Company and the truck drivers, and we believe that the oral testimony which was introduced to show that the drivers stated, in substance, that they were hauling for Linden Lumber Company, was not admissible, under the record in this case.

When we delete from this record, these oral statements of declarations made by the drivers and the testimony of the witness, Ethridge, who says he demanded the registration papers, that they were exhibited to him, and they showed that the truck was registered in the name of Linden Lumber

Company, there is, to our way of thinking, not enough evidence in the record to raise the issue of employer and employee between the drivers and the Lumber Company.

The motion is overruled.