## INDUSTRIAL INDEMNITY EXCHANGE v. SOUTHARD et al.

### No. 11042.

Court of Civil Appeals of Texas. Galveston.

Oct. 3, 1940.

Rehearing Denied Feb. 13, 1941.

Lightfoot, Robertson, Saunders & Gano, of Fort Worth, and B. F. Edwards, of Clarksville, for plaintiff in error.

Pat Beadle and Burnell Waldrep, both of Clarksville, for defendants in error.

CODY, Justice.

This is a suit by the widow and orphan of Elbert Vaughn Southard to recover compensation on account of his death while engaged in hauling logs for the Kurth Lumber Manufacturing Company. The principal ground of defense urged is that the undisputed evidence conclusively shows that the deceased, who owned the truck he was driving, and maintained its upkeep and supplied the lubricating oil and gas which he used, was, at the time of his injuries, "engaged in what may be termed a 'special employment' analogous to that of an independent contractor", and was not an employee of the Kurth Lumber Manufacturing Company, within the meaning of the Workmen's Compensation Act, Vernon's Ann. Civ.St. art. 8306 et seq., at the time he sustained the injuries which caused his death.

The jury found in answer to the special issues which were submitted:

1. That the deceased died as a result of injuries received by him while unloading logs at the Kurth Lumber Manufacturing Company on October 10, 1938.

2. That the Kurth Lumber Manufacturing Company did retain the right to control the means and method used by deceased in performing the details of the work he was engaged in for it.

3. That no employee of the same class as claimant worked substantially the whole of the year immediately preceding claimant's death in the same or similar employment.

4. That a fair and just rate of compensation was $15.86 per week.

5. That manifest hardship and injustice would result unless compensation was paid in a lump sum.

Before the court's charge was submitted to the jury appellant moved for an instructed verdict, and after the verdict was returned, it moved for judgment non obstante veredicto, which motions were overruled. And the court rendered judgment for appellees and against appellant for $2,962.93 —or 360 weeks in lump sum.

It is necessary to set forth the substance of the evidence to determine whether or not it conclusively established deceased to be an independent contractor, or whether or not it was sufficient to go to the jury on the point relative to whether the Lumber Company retained the right to control and direct the manner, means, and method used by deceased in performing the details of the work he was engaged in for the Lumber Company.

The Kurth Lumber Manufacturing Company operates a mill at Clarksville. It required logs, of course, in order to operate, and this required the felling of trees, the trimming of them, and hauling the logs thus obtained from the woods where they were obtained to the mill. Naturally the transportation of logs from woods to mill is an essential step in the manufacture of lumber. The Lumber Company had its woods foreman or boss, whose job it was to keep the mill supplied with logs. And logging operations included the buying of timber, cutting and trimming it, laying out roads from the place in the woods where the timber is cut to the highway, and the maintenance of such roads while the logs are being hauled. Under the woods boss was a foreman of the cutting crew, and a foreman of the loading crew, a foreman of the road crew, and a scaler to supervise the unloading of the logs after they have been hauled.

A tract to be cut was laid out in strips, and two truck drivers were assigned to a strip. The logs were too heavy to be loaded except by the use of teams, and to be unloaded except by a crane. The truck drivers had no independence with reference to loading the trucks, and none with reference to unloading. In the nature of things the roads were laid out by the company because they were necessary in order to get the logs out to the highway, and the same reason that made the laying out of such roads necessary made it necessary that the truck drivers use such roads as the Lumber Company laid out and maintained. The woods foreman testified that if the truck drivers knew of any better roads than those laid out by the company, they could use them. And there was but one highway leading from where the logs were obtained to Clarksville, so that the truck drivers necessarily used one country road.

The trucks which were used in hauling the logs to the mill did not belong to the Lumber Company. As indicated above, the deceased owned his own truck and paid its upkeep and furnished his gas and oil. In

some instances the trucks used to haul logs to the Lumber Company were not operated by such owners, but were driven by employees of such owners. The Lumber Company paid for such hauling on a quantitative basis—so much per thousand feet hauled.

The deceased had been hauling for the Lumber Company some four years. The records show that during the year preceding deceased's death he had worked 181 days for the Lumber Company, and that he had not worked for any one else. In point of fact, however, all the owners of the trucks being used to haul for the Lumber Company could pull them out of such service at any time, and use them as they chose without any penalty except the loss of such truck's "seniority" in service. That is, when the Company would lay off trucks from hauling, the trucks with the greatest seniority would be the last to be laid off.

The woods foreman gave out this letter to the truck drivers:

(Letter-head)
"J. H. Kurth, Jr.,          J. L. Spotten,
   President          Secretary.
    "H. A. Maas, Vice President.
"Kurth Lumber Manufacturing Company, Inc.
     "Capital $200,000.00.
"Plant
"Clarksville, Texas.          General Office
               "Keltys, Texas.
"Capacity 20,000,000 feet per year.
         "Clarksville, Texas.
         "October 8, 1938.
"To the Truck Drivers:

"I thought it had been made plain to you in the past the necessity of very careful driving on all of our log hauls, but it must have been forgotten from the way some of you have been driving in the past few weeks. The company and most of the log haulers have been working hard for the past five years to make the roads safe for the truck drivers as well as the public. We cannot afford to let the few reckless drivers undo in just a few minutes all that we have accomplished in the past five years.

"I realize the disadvantage the · high-speed truck has driving behind a low-speed truck, but it is absolutely necessary to pick your chances and find a suitable place to pass each other. It has been the practice of several high-speed trucks to pass while climbing hills as ordinarily it is easier to pass a truck of low-speed on a hill than

any other place, but you must realize that when two trucks pass one another on a hill that practically all of the road is taken up and that if a car or truck should meet you, a crash could not be avoided.

"I notice also, that some of the drivers will be driving at an average rate of speed but when another truck tries to pass, he will either pick up his speed or try to hold the road. This must be stopped. All trucks must stay on their side of the road unless it is impossible as it was in the last few days when the road was being graded. If you are forced to drive on the left hand side of the road and you meet a vehicle, stop and let it pass you.

"Due to the terrible dust that we have had on the Albion road since it has been graded, it is necessary for all truckers coming in after dark to put a light on the end of their logs for it is impossible to see a truck ten feet ahead unless it has a light on the end of the logs. Be sure to have all lights ready before Monday night.

"Now, I expect all this to be carried out to a letter, and if any of you feel that you cannot do this, it would be better to quit now and save further argument.

    "Yours truly,
        "Kurth Lumber Mfg. Co., Inc.
           "E. Q. Bates
            "Woods Foreman."

It will be noted from the last paragraph of the letter that, however, euphemistically stated, the foreman considered that he could and would stop drivers who did not conform, from work. The requirement that the drivers obey traffic regulations is, of course, not evidence of control. Dave Lehr, Inc. v. Brown, 127 Tex. 236, 91 S.W. 2d 693. But the very nature of the employment left no independence to a truck driver. There were two truck drivers to a strip and one loader. The driver was dependent upon the loader to get his truck loaded, and the loader in turn was dependent upon the two truck drivers to be kept busy. The very necessity of co-ordinating the haul with the loading and unloading facilities, and the limitation of routes that could be used, shows that the truck drivers had no independence of action except as every citizen has such independence. Each driver, so long as he worked, was an integral part of the Lumber Company's process of manufacturing lumber. It would seem that deceased was designated on the Lumber Company's books as an independent

contractor. However, he had been working for the company for four years. Whatever his right to quit his work may have been, he was working for the company steadily, and working for no one else. This fact created the presumption that he was an employee, and put the burden on appellant of showing that the relation was not that of master and servant. Ochoa v. Winerich Motor Sales Co., 127 Tex. 542, 94 S.W.2d 416. The fact that deceased furnished his own equipment, and was at liberty to use it as he pleased, does not constitute him an independent contractor. Schroeder et al. v. Rainboldt et al., 128 Tex. 269, 97 S.W.2d 679. We conclude that the evidence was sufficient to support the jury's answer to special issue No. 2. It was essential to the proper functioning of the Lumber Company's set-up that it retain the right to control and direct the manner, means and method used by the truck drivers hauling for it in performing the details of the work they were engaged in for said company.

We have carefully considered the authorities relied on by appellant, including Southern Surety Co. v. Shoemaker, Tex. Com.App., 24 S.W.2d 7; Cocke & Braden v. Ayer, 129 Tex. 660, 106 S.W.2d 1043; Lehr, Inc. v. Brown, 127 Tex. 236, 91 S.W.2d 693; Smith Bros. v. O'Bryan, 127 Tex. 439, 94 S.W.2d 145 (and Riggs v. Haden Co., 127 Tex. 314, 94 S.W.2d 152, which, like the Smith Bros. case, was passed upon by this court). In the division of labor, and because transportation of logs must be by truck, deceased was engaged in a different line of employment from other employees of the company, but it was not an independent line of employment. The employment was as integral as the cutting of the timber, as that of milling the timber after it was cut, and the conditions of loading and unloading and the line over which the logs must be hauled were sufficient to justify the Lumber Company in retaining the control which the jury found in answer to special issue No. 2, that it retained, and the proof, as we have stated, supports such finding.

We have considered the other assignments of error relating to special issue No. 2, and overrule them. We believe that the submission of special issue No. 2 was the submission of the issue of whether the deceased was an independent contractor, and that it was not error therefore for the Court to refuse to again submit the issue in a different form.

We have considered the complained of argument of counsel, and the assignments relating thereto, and conclude they are without merit.

There being no reversible error, the judgment should be affirmed, and it is so ordered.

Affirmed.

On Rehearing.

Rehearing denied.

MONTEITH, Chief Justice.

I am unable to concur in the finding of the majority of this court that Elbert Vaughn Southard was an employee and servant of the Kurth Lumber Manufacturing Company, and not, as a matter of law, an independent contractor at the time he sustained the injuries which resulted in his death.

In arriving at this conclusion, I have taken into consideration every fact and circumstance in the record which would, in my opinion, tend to show such control over the action of the deceased by the Lumber Company as would constitute him its employee. In my opinion, the supervision exercised by the deceased in the manner, means and methods of doing the work in which he was engaged were not sufficient to constitute him an employee of the Lumber Company, when the fact that he was paid for the services rendered by him on the basis of the logs hauled, that he furnished the equipment used by him, and paid the expenses of its operation and repairs, and that the Lumber Company exercised no supervision over the number of logs hauled, the amount of work done, or the length of time devoted by him to his work for the Company, is taken into consideration.

These conclusions are based to a large extent on the cases of Smith Bros. v. O'Bryan, 127 Tex. 439, 94 S.W.2d 145, and Riggs v. Haden Co., 127 Tex. 314, 94 S.W.2d 152, both of which involved injuries to truck drivers and in both of which cases the facts are similar in all material respects to those in the instant case.

In each of the above cases the Commission of Appeals held that the drivers of the trucks involved were not employees, but that they occupied positions analogous to that of independent contractors.

For the above reasons, the judgment of the trial court should, in my opinion, be reversed and judgment here rendered in favor of the plaintiff in error.