AMERICAN GENERAL INSURANCE
COMPANY, Appellant,

v.

Mrs. Lillian E. SIMS et al., Appellees.

No. 5054.

Court of Civil Appeals of Texas.

El Paso.

Jan. 26, 1955.

Rehearing Denied Feb. 16, 1955.

W. B. Browder, Jr., Stubbeman, McRae & Sealy, Midland, for appellant.

McDonald & Shafer, Odessa, for appellees.

McGILL, Justice.

This is a workman's compensation suit. Appellee sued appellant to recover compensation benefits under the workmen's compensation statute for the death of her husband, Barney Sims, alleged to have resulted from injuries received by him on November 17, 1952, while he was driving a dump truck as an employee of W. O. Pelphrey, who was insured by appellant. Trial to a jury resulted in a verdict on which the court rendered judgment for $7,189.08 as compensation and $121.10 for doctors' services in favor of plaintiff against defendant.

The principal questions presented by this appeal are whether there is any evidence, and if so whether such evidence is sufficient to support the jury finding that the deceased Barney Sims at the time he sustained his injuries on November 17, 1952, was an employee of W. O. Pelphrey. It is appellant's contention that under the undisputed facts only one inference can be drawn, which is that Sims was an independent contractor and therefore the court should have directed a verdict for defendant.

A great deal has been written on the question of when one employed by another is an independent contractor or an employee, and on the elements bearing on the quality of a contract as affecting the character of the relationship. See Annotation to 20 A.L.R. 684. In this case we are relieved of

a great deal of labor by the case of American General Insurance Co. v. Hightower, Tex.Civ.App., 264 S.W.2d 481, opinion by the Eastland Court of Civil Appeals, in which a writ of error was refused, n. r. e. Hightower was working for W. O. Pelphrey on another job when he was injured.

We agree with appellant that the facts in this case are uncontroverted. W. O. Pelphrey had entered into a contract for the construction of a road located some distance west and north of the town of Stiles. He engaged trucks with drivers to haul the material for the construction of the road. With reference to the contract with Sims the testimony of J. H. Stroud, who was in charge of hauling the material for the road, is to the effect that Sims came out to where he was on the job and wanted to know if he could get his truck on, that he told him he didn't know what the situation was right at the minute, but to stay there and he would probably get on a little bit; that Sims got in line and pulled under the bin as the other truckers did; that he knew the price that was paid by the yard, to be hauled a quarter of a mile; that he told him what the price was; that Sims asked him what time he started in the morning and he told him it was seven o'clock, that the plant, that is, the crusher plant, started at seven; that he (Sims) knew where they were hauling the material and the direction they were going. That was about the extent of the evidence as to the contract entered into between the parties. Sims was told that the crusher plant started at seven o'clock in the morning. It was not specifically agreed that Sims should be there at seven o'clock or work until five-thirty in the afternoon when the crusher closed down, or as to when he should eat his lunch. It was shown that the crusher usually closed down half an hour for lunch. It was operated by employees of the defendant, and when the trucks engaged in hauling the material pulled under the chute of the crusher an employee of defendant would pull the lever and fill the truck. Defendant required that the trucks have a capacity of four or five yards. The defendant also had an employee at the place where the material was delivered who would direct the trucks to back up to the proper distance before they dumped the material. There is no evidence that the defendant exercised any control over the trucks during the time that they were traveling from the crusher to the place where they dumped the material on the road. All of the operating expenses on the truck, including the gas and oil and repairs, were paid by Sims. It further appears that Sims did not consider that he had contracted to work every day on the job, or for any specific number of hours each day—it was more or less left to him to decide when he would work and the number of loads he would haul, depending on how fast he would drive. He was injured after he had delivered a load of caliche and was returning to the crusher to get another load.

The facts in this case are very similar to the facts in Dave Lehr, Inc., v. Brown, 127 Tex. 236, 91 S.W.2d 693, in which the Commission of Appeals (opinion adopted) held that the evidence was insufficient to show the relationship of employee and employer. That case is well considered, and we should be inclined to follow it were it not for the decision of the Eastland Court in the Hightower case in which a writ of error was refused n. r. e. The principal difference in the facts of this case as above outlined and those of the Hightower case is that in the Hightower case the truck driver was required to be on the job at seven o'clock in the morning and remain until five o'clock in the afternoon with one hour out for lunch, whereas there are no such requirements in this case. In both cases the truck driver was warned not to exceed the speed limit, but there is no evidence in this case that any drivers were discharged because they did so, as in the Hightower case. It is our view that these distinctions are unimportant and that the decision in the Hightower case is controlling here.

■■■ The court, over appellant's objections, admitted testimony of the witness Norris as to the substance of contracts between W. O. Pelphrey and other persons than the deceased Barney Sims as bearing on the contract entered into between Pelph-

rey and Sims. This was error. Such evidence could have no probative force to establish the contract between Pelphrey and Sims and was inadmissible. It was res inter alia acta. Williams v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 218 S. W.2d 482, w. r. n. r. e.; 17 Texas Jur. p. 388, Section 135. Appellee in her brief states that every material fact developed from such witness had theretofore been developed without objection from the witness Stroud and was subsequently developed without objection from defendant's witness Allgood. Appellant does not challenge this statement. We therefore assume that it is true. By not objecting to the admission of such evidence appellant waived any complaint it may have had to the testimony of the witness Norris. Chesshir v. Nall, Tex. Civ.App., 218 S.W.2d 248, w. r. n. r. e.

The court did not err in submitting Special Issues Nos. 1, 2, 3, 4 and 5 which inquired (1) if Barney Sims sustained an injury on November 17, 1952; (2) if such injury was sustained when Sims' dump truck overturned; (3) if such injury was accidental; (4) if at the time Sims sustained the injury he was an employee of Pelphrey; and (5) if Sims sustained an injury on November 17, 1952, in the course of his employment for W. O. Pelphrey. All these matters were put in issue by defendant's general denial, and had the court not submitted them but assumed that they were established as a matter of law, appellant would no doubt have had just cause to complain.

The definition of the term "employee" given in connection with Special Issue No. 4 was:

"The term 'employee' as used in this charge means every person in the service of another under any contract of hire, express or implied, oral or written, except one whose employment is not in the usual course of the trade, business, profession or occupation of his employer."

This definition is given in the statute, Art. 8309, Section 1, Vernon's Ann.Civ.St., and as said in Texas Employees' Ins. Ass'n v. Jones, Tex.Civ.App., 70 S.W.2d 1014, 1017, wr. dis.:

"We find nothing in the evidence or circumstances surrounding this cause that would call for any other or further definition of the word 'employee.'"

All that was necessary was the statutory definition. Blankenship v. Royal Indemnity Co., 128 Tex. 26, 95 S.W.2d 366.

The definition of the term "independent contractor" given by the court in connection with Special Issue No. 6 was:

"The term 'independent contractor' as used in this charge means any person, who in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods without submitting himself to their control in respect to all its details. The true test of a contractor would seem to be that he renders service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished."

This definition was approved by the Commission of Appeals in Shannon v. Western Indemnity Co., 257 S.W. 522. Appellant's objections to such definition are not well founded.

The testimony of the witnesses Stroud, Norris and Mrs. Sims was sufficient to warrant the submission of Special Issue No. 8, and to support the jury's answer thereto. This issue inquired whether any other employees, if Sims was an employee, of the same class as Sims, if any, had not worked substantially the whole of the year immediately preceding the injury, if any, of Sims on November 17, 1952, in the same or similar employment, in the same or neighboring place. The fact that Stroud did not know of any such employee during the 12 month period, and the fact that Norris did not know of any man engaged in the type of work that Sims was doing on November 17, 1952, who had worked as many as 300 days preceding November 17, 1952, and that Mrs.

Sims testified that her husband did not work regularly was sufficient to show that no other employee of the same class as Sims had worked substantially the whole year immediately preceding November 17, 1952. Federal Underwriters Exchange v. Stewart, Tex.Civ.App., 109 S.W.2d 1031, wr. dis.

Special Issue No. 9 inquired as to the average weekly wage, if any, of Sims that was just and fair to Sims and to the American General Insurance Company, and the answer thereto was $70. The evidence was ample to warrant the submission of this issue and such answer thereto. The net earnings of Norris as a truck driver operating the same kind of a truck as Sims on the same job was shown; also the amount Pelphrey paid to his truck drivers working on the same job as Sims; the amount Coates paid to drivers hired to drive his dump trucks on the same job as Sims, and the minimum wage schedule for truck drivers on the job on which Sims was working was specified in Pelphrey's contract under which he was building the road. These facts were sufficient to enable the jury to arrive at the average weekly wage of Barney Sims without mere conjecture or speculation.

From what we have said it follows that in our opinion all of appellant's points should be, and they are, overruled. However, we have no doubt that appellant prosecuted this appeal in good faith and that this is not a case which would warrant this court in assessing damages for delay.

The amount of the judgment is obviously erroneous, as pointed out by appellee. The judgment is therefore reformed so as to award plaintiff a judgment against defendant in the sum of $8,339.86, with interest thereon from December 15, 1953, at the rate of 4% per annum until paid. As so reformed the judgment is affirmed.

FRASER, Justice.

I concur in the disposition of this case because it seems clear that Mr. Sims was an employee of Pelphrey at the time of his death. It is of course difficult in a death case for those representing the estate of the dead man to prove the nature of the relationship in the absence of available witnesses, and of course to recover compensation, employment must be proven.

Based on the matter of control it is evident that Pelphrey exercised the control over Sims normally present in employer-employee relationships. He was hired to haul gravel at so much per quarter mile, and it is clear that he did not contract to do a set piece of work. To hold otherwise would be to say in effect that every time Sims backed his truck up to the loading bin he would be contracting with Pelphrey through the medium of any employee or common laborer who upon seeing the truck so placed pulled a lever releasing gravel into the truck. Certainly Pelphrey could have stopped Sims en route and directed him to a different destination or to pick up a different kind of load next time—Sims would still have been paid by the load per quarter mile. Otherwise Sims could have refused and sued on his contract. Would anyone here maintain that Sims could have insisted on delivering the gravel to the original destination and have sued Pelphrey if not permitted to do so? If Sims was an independent contractor it seems to this writer that in the absence of proof that he was to work so many days or haul so many loads to a certain fixed destination at an agreed price, then the only contractual picture would be that of successive contracts created each time that Sims backed his truck up to the loading bin, for by that time he would have completed his prior delivery of gravel. It has been argued that because Sims had controlled his own truck and had to make his own repairs and buy his own gas and oil, that he was probably an independent contractor, but the violinist in an orchestra supplies his own violin, provides its care and of course buys his own resin for the bow, as well as strings for the instrument. The same is true of the barber and his clippers, as well as the time-honored precedent of the cowboy who furnishes his own saddle. I therefore concur in holding that an objective and cumulative analysis of all the evidence indicates that the relationship, informal though it was, between Sims and Pelphrey was that of em-

ployer and employee because of the control exercised by Pelphrey over Sims, and because it is obvious that Sims was not hired to do a complete and set piece of work.

HAMILTON, Chief Justice (dissenting).

The writer respectfully dissents from the majority opinion in this case. The burden was upon the plaintiff to prove that her deceased husband was an employee of the contractor Pelphrey at the time of the husband's death. From a careful reading of the statement of facts I have been unable to find any evidence on which the jury could base its finding that deceased was an employee of the contractor. The jury certainly could not get it from the actual agreement made between the contractor's foreman, Stroud, and the deceased. According to plaintiff's witness Stroud, Sims, the deceased, came to the rock crusher of contractor and inquired if he could get his truck on. He was told to wait around and he could probably get on. The pay was so much per yard for a quarter mile haul. As stated in the majority opinion there is no evidence the contractor exercised any control over the trucks during the time they traveled from the crusher to the place where the material was to be dumped on the road. Certainly there was no evidence that any control was retained or exercised over the deceased between the crusher and the place the material was dumped, in fact we have very little evidence concerning the actual transaction between deceased and the contractor from which to determine the relationship between them. About all we have is that the deceased was in the service of the contractor. The contractor furnished deceased with material to haul by loading his truck and contractor told deceased where to dump the material. Deceased furnished and operated his own equipment for the hauling and was to receive so much per yard for a quarter mile haul.

In the absence of other evidence, in order to determine whether the relationship was one of employee and employer or independent contractor and employer, we must look at all the facts and circumstances surrounding the work and business of the deceased and of the contractor. The very definitions submitted by the court defining "employee" and "independent contractor" require that we look into all the surrounding facts and circumstances. The definition of "employee" as submitted by the court and as quoted in the majority opinion says in substance that one is an employee who is in the service of another, except one whose employment is not in the usual course of the trade, business, profession or occupation of his employer. It is noted that in the definition of "independent contractor" given by the court that

" 'The true test of a contractor would seem to be that he renders service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished.' "

The deceased, according to his wife's testimony, worked as a truck driver for Gardner Brothers for thirteen or fourteen years until 1947 or 1948, when he bought a dump truck of his own and started hauling for various general contractors. He continued in this line of work up until his death. From the evidence in this case it appears that the business of one hauling rock and dirt for others, furnishing his own equipment, is an independent business and occupation, and such was the business in which deceased was engaged at the time he made his contract with Stroud. Pelphrey, the contractor, was in the road construction business. In connection with that business he owned and operated a rock crusher used for the purpose of preparing material to be used in the building of road beds. The evidence shows that the contractor was not engaged in the business of hauling crushed rock or caliche, but in connection with his road building he customarily contracted with others to haul the material from the rock crusher to a designated place on the road. He didn't even own any equipment suitable for this kind of business. Other than furnishing the material to the trucker and loading his truck the contractor retained

no right of direction or control over the truckers other than to direct where the material was to be unloaded. This is an absolute minimum of direction necessary to secure the result of the work to be done, and not as to the means by which it is accomplished. When we look to the evidence of the relationship of the other truckers, engaged in hauling, with the contractor Pelphrey, we cannot escape the conclusion that their relationship was as independent contractor and employer. One of the truckers, Coates, testified that he had five trucks on the job; that he had his own foreman in control of the truck drivers; that Pelphrey exercised no control over them other than loading the trucks and directing where the load would be dumped. From the evidence it appears that both Pelphrey and Coates understood that their relationship was that of employer and independent contractor. Plaintiff's own witness, Stroud, testified that the relationship of all the truck drivers with contractor Pelphrey was the same.

The majority of the court cites the case of American General Insurance Co. v. Hightower, Tex.Civ.App., 264 S.W.2d 481, in support of its opinion. That case in turn cites Texas Employers' Insurance Ass'n v. Owen, Tex.Com.App., 298 S.W. 542, 543. Those two cases are most nearly in point to the holding of the majority of this court. However, in each of those cases there were certain measures of control exercised by the employer not present in this case. In the Hightower case the hours of work were controlled, as well as the lunch hours. The speed of the truck was controlled. In the Owen case the Supreme Court, in affirming the Court of Civil Appeals, 291 S.W. 940, had this to say:

"There are many features shown by the evidence and stated by the Court of Civil Appeals, wherein the McKnight Company had and exercised control over the deceased in the prosecution of his work. This is the test."

Another distinction in that case from the instant case was that McKnight, the employer, had many trucks and teams of his own engaged in the business of hauling road material.

Under the undisputed facts of the instant case the great weight of authority seems to uphold the proposition that the relationship of the deceased Sims and the contractor Pelphrey is that of employer and independent contractor. Industrial Indemnity Exchange v. Southard, 138 Tex. 531, 160 S.W.2d 905; Security Union Ins. Co. v. McLeod, Tex.Com.App., 36 S.W.2d 449; Lehr, Inc., v. Brown, 127 Tex. 236, 91 S.W.2d 693; Smith Bros. v. O'Bryan, 127 Tex. 439, 94 S.W.2d 145.

It is my considered opinion that this case should be reversed and rendered.